**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**FLINT DIVISION**

BEVERLY BIGGS-LEAVY, an
individual,

        Plaintiff,

    vs.

LADEL LEWIS, in her official and
individual capacities,

        Defendants.

Hon. _____

Civil Action No.: _____

**COMPLAINT**
**AND JURY DEMAND**

## COMPLAINT AND JURY DEMAND

*This action alleges, inter alia, violations of the First Amendment, 42 U.S.C. § 1983, as well as violation of the Michigan Open Meetings Act, MCLS § 15.261, et seq., by Ladel Lewis, a member of the Flint City Council, infringing upon the rights of Plaintiff as arising under those aforesaid bodies of law.*

Plaintiff, BEVERLY BIGGS-LEAVY, by and through her attorneys, Lento Law Group, P.C., and by way of Complaint, brings this action for damages and other legal and equitable relief against Defendant LADEL LEWIS, alleging as follows:

## INTRODUCTION

1. The City Council of the City of Flint, Michigan has gained nation-wide recognition, but unfortunately, not in a positive way.

2.     A wealth of video segments from various Council meetings have gone viral online on social media – predominately on YouTube, Facebook, and TikTok – due largely to the complete and utter chaos that unfolds at nearly every Council meeting.

3.     The City Council & Specials Affairs Committee meeting of Monday, August, 14, 2023, was a recent example of just this dysfunction.

4.     What made this meeting unique, however, was that, rather than it being a particular Councilman or Councilwoman facing the despotic and dictatorial caprices of Council leadership, it was instead a private citizen and member of the public in attendance at this particular meeting, who found both her Constitutional rights and her rights as arising under Michigan law, under attack from an out-of-control Chairperson on the Flint City Council.

**JURISDICTION AND VENUE**

5.     This is an action for damages against the Defendant, who at all times, were acting under color of State law, and in vindication of Plaintiff's civil rights secured by 42 U.S.C. § 1983, the Michigan Open Meetings Act, MCLS § 15.261, *et seq.*, and the First Amendment to the United States Constitution.

6.     This Court has original subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 & 1343.

7.     This Court also has supplemental jurisdiction over Plaintiff's related state claims pursuant to 28 U.S.C. § 1367(a), as such claims are so closely related to the

Title IX claims that they form part of the same case or controversy and arise out of a common nucleus of operative fact.

8.     Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(1) & (b)(2), as, upon information and belief, Defendant resides in this district and the events giving rise to Plaintiff's claims as complained of herein occurred within this district.

## PARTIES

9.     At all times relevant hereto, Plaintiff BEVERLY BIGGS-LEAVY, is an adult resident citizen of the County of Genesee, State of Michigan, with a residential address of 744 E. Philadelphia Blvd., Flint, Michigan 48505.

10.     At all times relevant hereto, Defendant LADEL LEWIS is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan, with a residential address for service of process believed to be 4024 Winona Street, Flint, Michigan 48504. Said Defendant is sued in both her official and individual capacity.

## GENERAL ALLEGATIONS

11.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

12.     On August 14, 2023, Plaintiff, BEVERLY BIGGS-LEAVY, was present at the meetings of the Flint City Council, which consisted of a regular Council meeting as well as a Special Affairs Committee meeting.

13.     Defendant, LADEL LEWIS, (hereinafter, "Lewis") is a Councilwoman on the Flint City Council, currently occupying the position of Vice-President, and she is also the Chairwoman of the Special Affairs Committee.

14.     As there is presently no Council President following the resignation of former Council President Allie Herkenroder in early July 2023, Councilwoman Lewis, as Vice-President, headed the regular Council meeting and the proceeded to chair the Special Affairs Committee meeting.

15.     Prior to the subject incident which will be complained of herein, at all times leading up thereto, from nearly the very beginning of the evening's Council meeting, Defendant Lewis adopted a needlessly aggressive tone towards her fellow Councilmembers and towards the public, which pervaded the meeting and seemed to create an air of hostility.

16.     Defendant Lewis made this hostility explicitly manifest during numerous instances throughout the evening's meeting, for instance, during one exchange with a member of the public who was giving his remarks during the Public Comment portion of the meeting.

17.     For the Court's edification, during the Public Comment portion of a Flint City Council meeting, members of the public who wish to address the Council are invited up to a lectern with a microphone and a countdown timer is set for three (3) minutes in which they have to speak.

18. The gentleman – a professor from Wayne State University – gave an impassioned and articulate speech, and just as his three minutes was elapsing, he informed Defendant Lewis that he was on his last sentence.

19. Rather than simply letting the man conclude, Defendant Lewis adopted a needlessly cocky tone of voice and said, "No sir, no sir, you had three minutes."

20. While it is true that each public speaker's comments are limited to three minutes, speakers are permitted – whether intentionally or inadvertently – to run over their time to finish their thought.

21. Defendant Lewis' silencing of the man was just another example of her inequal application of Council rules as against an individual with whom she takes personal umbrage.

22. Defendant Lewis yet again allowed her personal feelings towards a member of the public to influence her conduct as Chairwoman with regards to the Plaintiff herein, Mrs. Beverly Biggs-Leavy.

23. For background, as such history is relevant here, Mrs. Biggs-Leavy is a community organizer, who is one – among many – of the numerous individuals working on the recall effort to have Defendant Lewis removed from her seat on the Flint City Council.

24. Mrs. Biggs-Leavy's involvement and participation in the recall effort against Defendant Lewis is no secret to those in Flint, especially to those with an active interest in the goings-on for the Flint City Council.

25.     In fact, following the approval of the recall language at the end of June 2023, Mrs. Biggs-Leavy is one of several Flint residents coordinating efforts to garner the necessary signatures – about 800 – required to trigger a recall election for Defendant Lewis' seat on the Council.

26.     Given this history, it is reasonable to conclude – and it seems apparent from the events that unfolded, as will herein be described – that Defendant Lewis held a personal animus towards Mrs. Biggs-Leavy, likely in connection with her efforts to aid in removing her from the Council.

27.     The subject incident began when non-party Doug Matthews, a resident from Flint's 7th Ward, began speaking during the Public Comment portion of that evening's Council meeting.

28.     During Mr. Matthew's comments, he began to verbally attack the prior gentlemen – the professor from Wayne State University previously mentioned herein (*see* ¶¶ 16-21) – turning to address him directly, rather than addressing the Council, pointing at him accusatorily, and remarking, "And let me just say one thing to our out-of-town academic who's coming in here and criticizing what we're trying to put together: Where's his [unintelligible]? Where's his solution? What's he bringing to the table?"

29.     At this verbal attack and violation of the Council's rules of decorum by Mr. Matthews, almost immediately chaos erupted in the Council chamber as the audience became vocal in response to Mr. Matthew's improper conduct.

30.     Rather than calling Mr. Matthews out of order, Defendant Lewis proceeded to call the Wayne State professor out of order, to which he replied, "Nonsense".

31.     The outcry from the members of the public in attendance in the audience over Defendant Lewis' unjust conduct caused Lewis to finally declare, "Order in the chambers."

32.     Even Councilman Dennis Pfeiffer, who, until very recently, regularly sided with Councilwoman Lewis on most Council issues, but has since seemingly veered away from her to a degree, perhaps due to changing political winds, had to point out the hypocrisy with which Councilwoman Lewis was conducting herself in failing to rule Mr. Matthews out of order.

33.     Councilman Pfeiffer called a point of order, to which Defendant Lewis hastily responded, "What's your point?"

34.     Shaking his head in disgust, Councilman Pfeiffer responded, "That's a decorum violation," referring to Mr. Matthews' conduct, "That's a decorum violation, Madam Chair."

35.     Applause could be heard from the audience in response to Councilman Pfeiffer's words, and one resident in attendance could be heard saying, "Thank you. Thank you, Pfeiffer."

36.     In a tone that can only be described as self-satisfied, Councilwoman declared in response, "Denied."

37.     This denial of Councilman Pfeiffer's point of order was following by a dictatorial diatribe by Defendant Lewis against the Wayne State professor, again

accusing him of having been out of order, and defending Mr. Matthews despite his blatant decorum violation.

38.     Following this, Councilwoman Jerri Winfrey-Carter, in recognition of Defendant Lewis' bad call with respect to denying Councilman Pfeiffer's point of order related to Mr. Matthews' decorum violation, appealed the ruling of the Chair (Lewis).

39.     "That's fine," Defendant Lewis replied condescendingly.

40.     "Any support?" Lewis asked, seeking the required second.

41.     "Any support?" she asked again.

42.     Just as Defendant Lewis began to say, "That dies for no support," Councilwoman Tonya Burns interjected and expressed her support for Councilwoman Winfrey-Carter's motion.

43.     "Moving on," Defendant Lewis said, ignoring Councilwoman Burns.

44.     This led to a chaotic back-and-forth between Defendant Lewis and Councilwoman Burns, with Burns calling a point of order indicating to Lewis that she did not acknowledge her support of Winfrey-Carter's appeal.

45.     Explaining her delay in not immediately seconding Winfrey-Carter's appeal, Burns told Defendant Lewis, who had been eating throughout the meeting, "You're chewing. We can't even understand what you're saying."

46.     Once again, in dictatorial fashion, Defendant Lewis declared, "Denied," with great delight.

47.     Immediately, Councilwoman Burns appealed the ruling of the Chair (Lewis), with Councilwoman Winfrey-Carter supporting.

48.     As Defendant Lewis gathered herself to initiate the appeal proceedings, for reasons that are unclear, Councilwoman Eva Worthing then proceeded to take out her cellphone and begin recording the Wayne State professor who had been standing off to the side of the Council chamber.

49.     In response, he began recording Worthing right back.

50.     The act by Worthing prompted outcry from the audience, at which Defendant Lewis, addressing the public, stated, "Excuse me! You have freedom to record. Councilmembers have freedom to record. So let's proceed with the meeting and we will not go back and forth."

51.     Following this, Councilwoman Winfrey-Carter began making her case in support of her appeal, outlining the fact that Mr. Matthews was, in fact, out of order, despite Defendant Lewis' denial of Councilman Pfeiffer's point of order calling out his decorum violation.

52.     Councilwomen Worthing and Mushatt offered their opinions on the appeal, unsurprisingly (if you are familiar with the politics of the Flint City Council) defending Defendant Lewis' ruling, and finally, Councilman Quincy Murphy offered his opinion.

53.     During Councilman Murphy's remarks, he referenced the fact that the Councilman from Flint's 1st Ward – Councilman Eric Mays – was not present at the evening's meeting.

54.     For background, Councilman Mays – who is beloved within the City of Flint and has a massive following, both locally in Flint and nationally due to his viral online presence – is serving a thirty (30) day suspension from his seat on the Council, a matter which is being actively litigated as unlawful.

55.     In response to Councilman Murphy's remark, "And that's why he's (Mays) not here now," Plaintiff, Mrs. Biggs-Leavy exclaimed, "Oh, he'll be back."

56.     This recitation of the facts leading up to this point, although lengthy, is necessary, because all of the chaos, the back-and-forth, and the hostility from Defendant Lewis to those in attendance that evening – for example, her fellow Councilwoman Tonya Burns, and members of the public such as the Wayne State professor – seemingly served to make Defendant Lewis increasingly frustrated as the evening went on, finally culminate in Lewis taking out her frustration and directing same upon the Plaintiff herein.

57.     In response to Mrs. Biggs-Leavy's comment, which by no means was the first time someone from the audience had interjected that evening, and was certainly not disruptive, Defendant Lewis addressed her, saying, "Excuse me, so that is like the third time that you have spoken out. That is your warning."

58.     As Mrs. Biggs-Leavy had done no such thing, and astounded at the fact that Defendant Lewis would utter such a blatant fabrication, chastising her publicly before everyone in attendance for something she had not done, Mrs. Biggs-Leavy protested, voicing her objection to Defendant Lewis' salacious remark.

59.     Defendant Lewis responded, "You are out of order, and you are removed from this meeting," whereupon Lewis then directed the Flint Police Officer in attendance to remove Mrs. Biggs-Leavy from the meeting.

60.     Critically, Defendant Lewis then proceeded to tip her hand as to the fact that she did, in fact, know precisely who Plaintiff was, stating, "Please escort Mrs. Beverly Biggs-Leavy out of the room..."

61.     Ironically, the only disruption to the meeting which occurred during the subject exchange with Mrs. Biggs-Leavy was the one caused by Defendant Lewis herself, in wrongfully ordering Mrs. Biggs-Leavy be removed, for had Defendant Lewis ignored Mrs. Biggs-Leavy's comment that Councilman Mays would be back – as she had ignored plenty of other comments from members of the public in attendance – the meeting would have continued on uninterrupted.

62.     Instead, a combination of factors including: (1) her growing frustration and hostility as the evening went on, (2) her personal animus towards Mrs. Biggs-Leavy in light of her efforts to recall her, and (3) her personal animus towards Councilman Mays, whom Mrs. Biggs-Leavy was defending in so speaking out, all coalesced to cause Defendant Lewis to grossly overreact and exact revenge upon Plaintiff in violation of her rights as arising under Michigan's Open Meetings Act and the First Amendment to the United States Constitution.

63.     Plaintiff implores the Court to watch and take judicial notice of the events of the Flint City Council meeting of August 14, 2023, as recorded and made publicly

available on the City Council's YouTube channel via the link provided in the footnote[1].

64.     The relevant timecodes, for the Court's convenience are as follows:

    a.   The Wayne State professor's public comment: 41:46 to 46:13.

    b.   The beginning of Doug Matthews' public comment: 54:37 to 57:22.

    c.   The public outcry in response to Mr. Matthews, Defendant Lewis' defense of Mr. Matthews, Councilman Pfeiffer's Point of Order, the subsequent appeals by Councilwomen Winfrey-Carter & Burns with respect to Defendant Lewis' rulings, and the comments by Councilman Quincy Murphy: 57:23 to 1:05:55.

    d.   The comment by Plaintiff and the Defendant Lewis' vindictive removal of Plaintiff from the meeting: 1:05:56 to 1:07:15.

**COUNT I**
**INFRINGEMENT ON FREEDOMS OF SPEECH & ACCESS**
**FIRST & FOURTEENTH AMENDMENT**
**As to Defendants Ladel Lewis**
**(42 U.S.C. § 1983)**

65.     Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

66.     The First Amendment to the United States Constitution provides as follows:

> Congress shall make no law respecting an establishment
> of religion, or prohibiting the free exercise thereof; or
> abridging the freedom of speech, or of the press; or the
> right of the people peaceably to assemble, and to petition
> the Government for a redress of grievances.

---

[1] https://www.youtube.com/watch?v=QVbJuRdJzao&t=2985s

67.   As incorporated to the States through the Fourteenth Amendment, the First Amendment provides protection to, and opportunity for, the freedom to access public forums, and the freedom to speech at said forums.

68.   For example, it is well-settled that the First Amendment guarantees the right of public access to criminal trials, including the right to listen, take notes, and to disseminate and publish what an individual observes at the proceeding. *See*, Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555,575-80 (1980); *see also*, Somberg v. Cooper, 582 F.Supp.3d 438, 443 (E.D. Mich. Jan. 26, 2022).

69.   "The First Amendment's right to access criminal proceedings has been expanded to several other proceedings outside of the criminal-judicial context." Somberg, supra. at 443; *see also*, Detroit Free Press v. Ashcroft, 303 F.3d 681, 695 (6th Cir. 2002).

70.   For matters outside of the trial phases of criminal proceedings, many cases have consistently applied the two-part "experience and logic" test articulated in Richmond Newspapers, supra., and its subsequent line of cases. *See, e.g.*, Press-Enter. II, 478 U.S. at 13 (preliminary hearings); Press-Enter. I, 464 U.S. at 501-04, (voir dire examination and juror selection); United States v. Simone, 14 F.3d 833, 842 (3d Cir. 1994) (post-trial examination of juror for potential misconduct); United States v. Smith, 787 F.2d 111, 116 (3d Cir. 1986) (transcripts of sidebars or chambers conferences concerning evidentiary rulings); United States v. Criden, 675 F.2d 550, 554 (3d Cir. 1982) (pretrial suppression, due process and entrapment hearings).

71.     The Sixth Circuit, in <u>Detroit Free Press v. Ashcroft</u>, explains, "The <u>Richmond Newspapers</u> two-part test has also been applied to particular proceedings outside the criminal judicial context, including administrative proceedings." supra, at 695.

72.     Even further, the Sixth Circuit, opined, "[W]e believe that there is a limited First Amendment right of access to certain aspects of the executive and legislative branches." <u>Id.</u>

73.     Regarding the first prong of the two-part test laid out in <u>Richmond Newspapers</u> – "experience" – the Sixth Circuit explained that, "[T]he case for a right of access has special force when drawn from an enduring and vital tradition of public entree to particular proceedings or information." <u>Id.</u> at 589.

74.     Put another way, because a "tradition of accessibility implies the favorable judgment of experience," <u>Globe Newspaper</u>, 457 U.S. at 605 (quoting <u>Richmond Newspapers</u>, supra. at 589) [the Court must] consider . . . whether the place and process have historically been open to the press and general public." <u>Press-Enter. II</u>, 478 U.S. at 8.

75.     With this first prong in mind, the "place and process" at issue here is the Flint City Council, specifically, its open public meeting of August 14, 2023.

76.     Such Flint City Council meetings have traditionally been open to the public, and in fact, such openness is mandated by the City's Charter, specifically, Sec. 1-404, and by the Michigan Open Meetings Act, 1976 PA 267, MCL 15.261 *et seq.*

77.    Thus, both historical precedent and the laws unpinning such precedent, weigh in Plaintiff's favor with regard to the "experience" prong of the <u>Richmond Newspaper</u> two-part test.

78.    With regards to the second prong – "logic" – this prong asks, "whether public access plays a significant positive role in the functioning of the particular process in question." <u>Press-Enter. II</u>, 478 U.S. at 8-9.

79.    As the Sixth Circuit explained in <u>Detroit Free Press v. Ashcroft</u>, "public access acts as a check on the actions of [the public body] by assuring us that proceedings are conducted fairly and properly... [and] Second, openness ensures that government does its job properly; that it does not make mistakes." supra, at 703-704.

80.    Underlying the right of access, is "the common understanding that a major purpose of the [First] Amendment was to protect the free discussion of governmental affairs" and "to ensure that this constitutionally protected 'discussion of government affairs' is an informed one." <u>Globe Newspaper Co. v. Superior Court for Norfolk Cnty</u>., 457 U.S. 596, 604-05, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982).

81.    Public scrutiny also "fosters an appearance of fairness" and "permits the public to participate in and serve as a check upon the judicial process." <u>Id.</u> at 606.

82.    With these principles in mind, the ability of Plaintiff to access the public forum that is the Flint City Council, clearly serves a significant positive role in the Council's functioning in that it reinforces the openness of the Council meetings, subjects its members to public scrutiny, and ensures that the discussion of

governmental affairs which take place at these meetings are observable by an interested citizenry, thus fostering an informed public.

83.     "Public access [] helps inform the public of the affairs of the government. Direct knowledge of how their government is operating enhances the public's ability to affirm or protect government's efforts. When government selectively chooses what information it allows the public to see, it can become a powerful tool for deception." Detroit Free Press v. Ashcroft, supra. at 704-705.

84.     Thus, it appears clear that Plaintiff's access to the Flint City Council meeting of August 14, 2023, served a significant positive role in the Council's functioning for the foregoing reasons, weighing in Plaintiff's favor with regard to the "logic" prong of the Richmond Newspaper two-part test.

85.     Thus, having satisfied both prongs of the Richmond Newspaper two-part test, a First Amendment right of access attaches to the Flint City Council meetings, with regards to Plaintiff's right to be present and record.

86.     Even so, admittedly, the right of access is not absolute.

87.     Utilizing the Richmond Newspaper logic-experience test, the Sixth Circuit made clear that, the right which attaches where the access sought has "historically been open to the press and general public... and public access plays a significant positive role in the functioning of the particular process in question" is a "*qualified* right". United States v. Miami Univ., 294 F.3d 797, 821 (6th Cir. 2002).

88.     To the extent that Plaintiff's right to attend a Flint City Council meeting may be construed as a speech right, rather than an access right, the foregoing principle

that such a right is a qualified right is consistent with the principle that the government can impose, time, place, and manner restrictions on free speech.

89.    Even so, those time, place, and manner restrictions, like restrictions on the qualified right to access, must nonetheless be "narrowly tailored to serve a significant governmental interest." Lexington H-L Servs. v. Lexington-Fayette Urban Cty. Gov't, 879 F.3d 224, 228 (6th Cir. 2018) (as to time, place, and manner restrictions); *see also*, Somberg, supra. at 444, and Eu v. San Francisco Cnty. Democratic Cent. Comm., 489 U.S. 214, 109 S. Ct. 1013, 103 L.Ed. 2d. 271 (1989) (as to access restrictions) ("The right to access, like many aspects of the First Amendment, is not absolute. For a state action for survive a First Amendment challenge, the enforced regulation must be narrowly tailored to advance a compelling state interest.")

90.    That said, only a time, place, and manner restriction which is *content-neutral* must be narrowly tailored to serve a significant governmental function. Lexington, supra. at 228.

91.    As opposed to this intermediate level of scrutiny, time, place, and manner restrictions which are *content-based* are "subject to the most exacting form of scrutiny, in which a court asks whether the regulation is necessary to serve a compelling state interest and whether it is narrowly drawn to achieve that end."

92.    Here, the time, place, and manner restriction at issue was Defendant Lewis' order as Council Chairperson to remove Plaintiff from the August 14, 2023, Council

meeting, following Plaintiff's remark in reference to Councilman Eric Mays, stating specifically, "Oh, he'll be back."

93.     Defendant Lewis' order to stifle Plaintiff's speech and remove her from the meeting was not content-neutral as evidenced by the attendant circumstances leading up thereto, namely that:

   a.   Plaintiff's speech was no more egregious in volume or duration than other exclamations, interjections, or comments made by other members of the public in attendance, and those individuals were not similarly silenced and removed by Defendant Lewis; and

   b.   The content of Plaintiff's speech positively referenced and/or defended a political rival of Defendant Lewis, causing Defendant Lewis to retaliate by taking more drastic action against Plaintiff than she would for speech not in defense of Councilman Mays.

94.     Thus, Defendant Lewis' order silencing and removing Plaintiff, having been enacted at least in-part based upon its content ("in-part" because it was also enacted on the basis of the identity of the Plaintiff and her recall effort against Defendant Lewis), must have been both (1) necessary to serve a compelling state interest, and (2) narrowly drawn to achieve that end.

95.     Defendant Lewis' order to silence and remove Plaintiff from the August 14, 2023, Council meeting was neither necessary to serve a compelling state interest, not narrowly drawn to achieve that end.

96.     Defendant Lewis' order to silence and remove Plaintiff from the August 14, 2023, Council meeting was not necessary to serve a compelling state interest because ultimately Defendant Lewis could have simply ignored Plaintiff's comment, as she had with every other audience comment up to that point, in that she did not act to remove those individuals.

97.     Had Defendant Lewis taken no action against Plaintiff whatsoever in connection with Plaintiff's comment, the compelling state interest of proceeding with the City Council meeting as planned would still have been effectuated.

98.     Further, Defendant Lewis' order to silence and remove Plaintiff from the August 14, 2023, Council meeting was not narrowly drawn to achieve the compelling state interest of proceeding with the City Council meeting as planned, as (1) a least restrictive means was available in that Defendant Lewis could only have ordered that Plaintiff remain silent as opposed to simultaneously ordering that she be removed, and (2) the means employed by Defendant Lewis did not advance the state interest as reacting as Defendant Lewis did actually caused a significantly longer interruption and significantly greater disruption to the meeting's proceedings than had Defendant Lewis taken no action at all.

99.     In other words, Defendant Lewis' order to silence and remove Plaintiff from the August 14, 2023, Council meeting ran counter to the compelling state interest and only served to advance Lewis' own personal agenda of retribution against Plaintiff.

100.   Thus, Defendant Lewis' self-serving and retaliatory content-based abridgement of Plaintiff's freedom of speech and her freedom to access an open public meeting was nothing more than an arbitrary, capricious, vindictive, despotic, and needlessly restrictive infringement on Plaintiff's First Amendment rights, as aforesaid.

**COUNT II**
**FIRST AMENDMENT RETALIATION CLAIM**
**FIRST & FOURTEENTH AMENDMENT**
**As to Defendants Ladel Lewis**
**(42 U.S.C. § 1983)**

101.   Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

102.   As aforementioned, Plaintiff, is a community organizer, who is one – among many – of the numerous individuals working on the recall effort to have Defendant Lewis removed from her seat on the Flint City Council.

103.   In fact, following the approval of the recall language at the end of June 2023, Plaintiff is one of several Flint residents coordinating efforts to garner the necessary signatures – about 800 – required to trigger a recall election for Defendant Lewis' seat on the Council.

104.   These political activities by Plaintiff are of the type of constitutionally-protected conduct safeguarded by the First Amendment.

105.   An adverse action was taken against Plaintiff by Defendant Lewis that would deter a person of ordinary firmness from continuing to engage in such

constitutionally-protected conduct, in that Defendant Lewis silenced Plaintiff and ordered Plaintiff be removed from the August 14, 2023, Flint City Council meeting.

106. This adverse action by Defendant Lewis against Plaintiff was motivated at least in part by the Plaintiff's protected conduct; in other words, Defendant Lewis retaliated against Plaintiff at the August 14, 2023, meeting, at least in part due to Plaintiff's efforts to have Defendant Lewis recalled and removed from her seat on the Flint City Council.

107. As such, Defendant Lewis has violated Plaintiff's First Amendment rights as Lewis, a government official, has subjected Plaintiff to retaliatory action for Plaintiff's having engaged in constitutionally-protected conduct.

## COUNT III
## <u>VIOLATION OF THE MICHIGAN OPEN MEETINGS ACT</u>
### As to Defendant Ladel Lewis
### (MCLS § 15.261, *et seq.*)

108. Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

109. The Michigan Open Meetings Act (hereinafter, the "MI OMA" or "the Act"), codified at MCLS § 15.261, *et seq.*, provides in relevant part at § 15.263(1), as follows:

> All meetings of a public body must be open to the public and must be held in a place available to the general public. All persons must be permitted to attend any meeting except as otherwise provided in this act.

110. Despite the aforecited provision of the MI OMA, the Act does contemplate the exclusion of individuals from open public meetings.

111.    Specifically, MCL 15.263(6) provides:

> A person must not be excluded from a meeting otherwise
> open to the public *except for a breach of the peace actually
> committed at the meeting*.

(Emphasis added)

112.    As justification for her removal of Plaintiff, Defendant Lewis explained that

Plaintiff was being removed from the meeting for violating "the disorderly person

City Code subsection." (*See*, the link at fn. 1, timecode 1:07:06 to 1:07:10).

113.    By this, presumably Defendant Lewis is referring to Flint City Code of

Ordinances §31-12 "Disorderly Conduct and Disorderly Persons".

114.    As the Michigan 1st District Court of Appeals made clear in <u>RPF Oil CO. v.</u>

<u>Genesee Cty.</u>, 330 Mich. App. 533, 538-9 (2019):

> State law may preempt a local government's law either
> through a direct conflict or through "occupying the field of
> regulation which the municipality seeks to enter." Thus,
> an ordinance is preempted if it is "in direct conflict with
> the state statutory scheme"... [L]ocal governments may
> regulate matters of local concern only in a manner and to
> the degree that their regulations do not conflict with state
> law. A local regulation directly conflicts with a state
> statute if the regulation "permits what the statute
> prohibits or prohibits what the statute permits."

(Internal citations omitted)

115.    As an initial matter, nothing in Flint City Code of Ordinances §31-12

"Disorderly Conduct and Disorderly Persons" authorizes the Flint City Council or

Defendant Lewis as a member thereof to remove a member of the public from an

open public meeting for disorderly conduct, rather, §31-12 is purely definitional,

setting forth sixteen (16) discrete actions which would constitute a disorderly conduct offense, but setting forth no punishment in connection therewith.

116.   Additionally, Flint City Code of Ordinances §31-12 "Disorderly Conduct and Disorderly Persons", specifically, in the manner in which is being utilized by Defendant Lewis – as a justification for removing members of the public from an open public meeting – conflicts with MCL 15.263(6) in that §31-12 permits what MCL 15.263(6) prohibits; in other words, §31-12 permits the exclusion of members of the public from an open public meeting for grounds other than solely "a breach of the peace actually committed at the meeting," as provided for in MCL 15.263(6).

117.   Flint City Code of Ordinances §31-12 "Disorderly Conduct and Disorderly Persons" is therefore in direct conflict with MCL 15.263(6) and is thus preempted by same.

118.   Given this, regarding the sole basis under MCL 15.263(6) upon which an individual may be excluded from an open public meeting – "a breach of the peace actually committed at the meeting," – importantly, "a breach of the peace" is not defined within the body of the MI OMA.

119.   The definition of "a breach of the peace" under the MI OMA was an issued directly addressed at length by an unpublished opinion out of the Michigan 1st District Court of Appeals, <u>Cusumano v. Dunn</u>, 2020 Mich. App. LEXIS 5652, a full copy of which is annexed hereto as **EXHIBIT "A"**.

120.   The appellate court in <u>Cusumano</u> looked to numerous other Michigan state court cases throughout time which sought to define a "breach of the peace", for example, *inter alia*:

   a. <u>People v. Bartz</u>, 53 Mich. 493, 495 (1884); <u>Davis v. Burgess</u>, 54 Mich. 514 (1884); and <u>People v. Loveridge</u>, 75 Mich. 488, 491-494 (1889), which together "indicate that the kind of conduct that constitutes a 'breach of the peace' includes abusive vile, and excessive acts that are grossly inconsistent with civil conduct acceptable in the community." <u>Cusumano</u>, supra. at 12;

   b. <u>Yerkes v. Smith</u>, 157 Mich. 557, 560 (1909), in which the Michigan Supreme Court stated that, "there can be no breach of the peace within the meaning of the law that does not embrace some sort of violent as well as dangerous conduct";

   c. <u>Regents of Univ. of Mich. V. Washtenaw Co. Coalition Against Apartheid</u>, 97 Mich. App. 532 (1980), which found a breach of the peace in connection with "confrontational conduct which required physical and forceful expulsion by law enforcement officials"; and

   d. <u>City of Owosso v. Pouillon</u>, 254 Mich. App. 210, 220 (2002), a case involving a defendant who made "grotesquely exaggerated speech when he publicly spoke out against abortion while standing on city property near a dentist's office and a church where mothers were dropping off their children for daycare and preschool," and nonetheless,

the Court of Appeals concluded that, "such conduct had no tendency to incite an imminent breach of the peace".

121.   In summarizing its analysis of the definitions of "breach of the peace" from the aforementioned cases and others, the Court of Appeals in <u>Cusumano</u> opined that:

> All of these cases indicate that a "breach of the peace" constitutes seriously disruptive conduct involving abusive, disorderly, dangerous, aggressive, or provocative speech and behavior tending to threaten or incite violence. These cases clarify that under Michigan law a "breach of the peace" goes well beyond behavior acceptable in civil society.

122.   Given these prior interpretations of a "breach of the peace" in the context of the MI OMA, it is clear that Plaintiff's remark in reference to Councilman Eric Mays, simply stating, "Oh, he'll be back," was not speech that was seriously disruptive, nor did Plaintiff manifest behavior threatening or inciting violence, nor did Plaintiff require physical and forceful expulsion by law enforcement (she was escorted by an officer, but she did not resist and went peaceably), and nor did Plaintiff's conduct go "well beyond behavior acceptable in civil society".

123.   In sum, Plaintiff's conduct as alleged herein simply was not of the type, caliber, nature, or quality, that could justly be called a "breach of the peace".

124.   As such, as MCL 15.263(6) only permits the exclusion of persons from a meeting otherwise open to the public for a "breach of the peace actually committed at the meeting," in so removing Plaintiff despite her conduct not rising to the level

of a "breach of the peace" as that phrase has come to be defined by Michigan courts, Defendant Lewis has violated MCL 15.263(6).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, BEVERLY BIGGS-LEAVY, demands judgment against the Defendant, LADEL LEWIS, for the following damages:

1) General, compensatory, punitive, and exemplary damages, with interest;

2) Reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. 1988 and/or MCL § 15.273,

3) Statutory exemplary damages of not more than $500.00 total per MCL § 15.273; and

4) For such other further relief as the Court may deem equitable and just.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully Submitted,

**LENTO LAW GROUP, P.C.**

Dated: <u>August 17, 2023</u>

JOHN A. FERNANDEZ, ESQUIRE
MI State Bar No. P68029
(*Admitted in the E.D. of Michigan*)
LENTO LAW GROUP, P.C.
The Ferris Wheel
615 Saginaw Street
Flint, MI 48502
T: (810) 962-8200 | F: (810) 962-8201
jafernandez@lentolawgroup.com
*Attorney for Plaintiff*

**LENTO LAW GROUP, P.C.**

Dated: <u>August 17, 2023</u>

JOSEPH CANNIZZO JR., ESQUIRE
AL State Bar No. 3584O57X
(*Admitted in the E.D. of Michigan*)
LENTO LAW GROUP, P.C.
Chase Corporate Center
1 Chase Corporate Center, Suite 400
Birmingham, AL, 35244
T: (385) 485-0600 | F: (313) 992-1122
jcannizzo@lentolawgroup.com
*Attorney for Plaintiff*

**LENTO LAW GROUP, P.C.**

Dated: <u>August 17, 2023</u>

LAWRENCE A. KATZ, ESQUIRE
NJ State Bar No. 027051988
(*Admitted in the E.D. of Michigan*)
LENTO LAW GROUP, P.C.
3000 Atrium Way, Suite 200
Mt. Laurel, NJ 08054
T: (856) 652-2000 | F: (856) 375-1010
lakatz@lentolawgroup.com
*Attorney for Plaintiff*