UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEVERLY BIGGS-LEAVY

    Plaintiff                   Honorable Sean F. Cox

v.                         Magistrate Judge Kimberly G. Altman

                              Case No. 4:23-cv-12123-SFC-KGA

LADEL LEWIS, in her official and
Individual capacities

    Defendant

_____/

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV.P. 12(b)(6)

Defendant Ladel Lewis, in her official and individual capacities, by and through her attorneys Butzel Long, a professional corporation, respectfully moves to dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and in support thereof states as follows:

1. The undersigned counsel certifies that counsel communicated in writing with opposing counsel on November 7, 2023, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief. Opposing counsel has not responded.

2. Plaintiff's Complaint fails to state a claim on which relief can be granted and Defendant hereby moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

IBUTZEL\000147576\0104\100583500.v5-11/13/23

3.     Defendant relies on the arguments and exhibits submitted in the Brief filed in support of this motion, which follows and is incorporated herein by reference.

WHEREFORE, for the reasons set forth in Defendant's Brief filed in support of this Motion to Dismiss, Defendant respectfully requests that this Court dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and award Defendant her costs and attorney fees, plus such other relief as this Court deems proper.

BUTZEL LONG, PC

By: /s/ Frederick A. Berg
        Frederick A. Berg (P38002)
        Sheldon H. Klein (P41062)
        Attorneys for Defendant
        150 W. Jefferson Suite 100
        Detroit, MI 48226
        (313) 225-7000
        berg@butzel.com
        klein@butzel.com

Dated:  November 13, 2023

2

# **TABLE OF CONTENTS**

1.  Count 1: Plaintiff Does Not Have a First Amendment Right to Engage in Repeated Disruptive Behavior at a City Council Meeting. ....................................................................................10

    a.   A Council meeting is a designated, limited public forum..................11

    b.   The Council Rules were content-neutral.............................................12

    c.   Plaintiff had other means of expression .............................................14

    d.   The Council Rules were "narrowly tailored"......................................14

    e.   The Complaint applies the wrong First Amendment analytic framework.................................................................................16

2.  Count II: The Retaliation Claim Fails ..........................................................17

3.  Absolute Legislative Immunity Bars Plaintiff's Federal Claims .................20

4.  Section 1983 Qualified Immunity Also Bars Plaintiff's Federal Claims ...........................................................................................................22

5.  Count III: under The Michigan Open Meetings Act, Must Be Dismissed....................................................................................................24

    a.   Plaintiff is not entitled to relief because the Complaint does not allege an intentional violation of the OMA. ........................25

    b.   The Council's enforcement of its disorderly conduct rule is not contrary to or preempted by the OMA. ....................................26

        i    Plaintiff ignores controlling Sixth Circuit law .............................26

        ii   Plaintiff ignores the text of the OMA and instead relies on an unsound definition of "breach of the peace".............................................................................................26

        iii  City Ordinance 31-10 is not preempted by the OMA. ................29

6.  The Official Capacity Claims Should Be Dismissed because the City is the real-party-in-interest....................................................................32

7.  Costs and Attorneys' Fees Should Be Awarded Because This Action Is Frivolous, Unreasonable, Without Foundation, and Has Been Brought In Bad Faith...................................................................34

<u>QUESTIONS PRESENTED</u>

Question I        Does the First Amendment bar a City Council from enforcing content-neutral rules relating to the time, place and manner of speech at a Council meeting?

Question II       Has Plaintiff adequately alleged that her removal from the Council Meeting would deter a person of ordinary firmness in Plaintiff's position from further speech, as required for a First Amendment retaliation claim?

Question III      Does absolute legislative immunity bar both the First Amendment (Count I) and First Amendment Retaliation (Count II) claims?

Question IV      Does qualified immunity bar Counts I and II because the rights claimed by Plaintiff were not clearly established?

Question V        Does the Michigan Open Meetings Act ("OMA") claim (Count III) fail because Defendant did not act with the specific intent to violate the statute?

Question VI      Does the OMA claim fail because removing Plaintiff from the meeting was permitted by and not inconsistent with OMA?

Question VII     Should the Official Capacity claims be dismissed because Plaintiff is not the real-party in interest?

Question VIII    Should Defendant recover costs and fees for Plaintiff's frivolous, bad faith litigation?

CONTROLLING OR MOST PERTINENT AUTHORITY

Question I          *Miller v. City of Cincinnati*, 622 F.3d 524 (6th Cir. 2010)

                    *Ward v. Rock Against Racism*, 491 U.S. 781, (1989)

                    *Youkhanna v. City of Sterling Heights*, 934 F.3d 508
                    (6th Cir. 2019)

Question II         *Mezibov v. Allen*, 411 F.3d 712, 722 (6th Cir. 2005)

Question III        *Bogan v. Scott-Harris*, 523 U.S. 44 (1998)

Question IV         *City of Escondido, California v. Emmons*, 586 U.S. __,
                    139 S. Ct. 500 (2019)

Question V          *Speicher v. Columbia Tp. Bd. of Trustees*, 497 Mich. 125
                     (2014),

Question VI         *Youkhanna v. City of Sterling Heights*, 934 F.3d 508
                    (6th Cir. 2019)

Question VII        *Monell v. New York City Dept. of Social Services*, 436 U.S. 658,
                    (1978)

Question VIII       *Hughes v. Rowe*, 449 U.S. 5 (1980)

                    *In re: Ruben*, 825 F.2d 977 (6th Cir. 1987)

iii

## INDEX OF AUTHORITIES

Page(s)

Cases

*Anderson v. Creighton,*
  483 U.S. 635 (1987) .......................................................................... 23
*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................ 4
*Ater v. Armstrong,*
  961 F.2d 1224 (6th Cir. 1992)........................................................... 13
*Attitude Wellness, LLC v. Village of Pinckney,*
  606 F.Supp 3d 624 (E.D.Mich. 2022)............................................... 31
*Bailey v. City of Ann Arbor,*
  860 F.3d 382 (6th Cir. 2017).......................................................... 1, 5
*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................ 4
*Bible Believers v. Wayne County,*
  805 F.3d 228 (6th Cir. 2015)............................................................ 23
*Bogan v. Scott-Harris,*
  523 U.S. 44 (1998) ................................................................ 3, 20, 21
*Citizens in Charge, Inc. v. Husted,*
  810 F.3d 437 (6th Cir. 2016)............................................................ 24
*City & Cnty. of San Francisco, Calif. v. Sheehan,*
  575 U.S. 600 (2015) .......................................................................... 23
*City of Escondido, California v. Emmons,*
  586 U.S. __, 139 S. Ct. 500 (2019) .............................................. 3, 24
*Collins v. Vill. of New Vienna,*
  75 F. App'x 486 (6th Cir. 2003) ....................................................... 21
*Crawford v. Tilley,*
  15 F.4th 752 (6th Cir. 2021) ............................................................. 23
*Cusumano v. Dunn,*
  2020 WL 5079615 (August 27, 2020) ......................................... 27, 28
*Danse Corp. v. City of Madison Heights,*
  466 Mich. 175, 644 N.W.2d 721 (2002)....................................... 28, 29
*Davis v. Burgess,*
  54 Mich. 514, 20 N.W. 540 (1884).................................................... 28
*Davis v. Detroit Pub. Schools Community Dist.,*
  17-CV-12100, 2017 WL 3129838 (E.D. Mich. July 24, 2017),
  *aff'd,* 899 F.3d 437 (6th Cir. 2018),............................................... 22

*DeRuiter v. Twp. Of Byron*,
  505 Mich. 130, 949 N.W.2d 91 (2020) ......................................................... 30, 31
*Eastland v. United States Servicemen's Fund*,
  421 U.S. 491 (1975) ......................................................................................... 21
*Fox v. Vice*,
  563 U.S. 826 (2011) ......................................................................................... 34
*Free Press v. Ashcroft*,
  303 F.3d 681 (6th Cir. 2002) ........................................................................... 17
*Genuine Solutions Counseling Center, P.L.L.C. v. Governor Gretchen Whitmer*,
  2022 WL 17997591 (Mich. Ct. Cl. Apr. 13, 2022) ........................................... 33
*Guindon v. Twp. of Dundee, Mich.*,
  488 F. App'x 27 (6th Cir. 2012) ....................................................................... 21
*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ................................................................................... 22, 24
*Hughes v. Rowe*,
  449 U.S. 5 (1980) ....................................................................................... 3, 34
*In re: Ruben*,
  825 F.2d 977 (6th Cir. 1987) ................................................................. 3, 34, 35
*Sch. Dist. Bd. of Educ.*,
  3 F.4th 887 (6th Cir. 2021) ......................................................................... 12, 13
*Kent v. Ohio House of Representatives Democratic Caucus*,
  33 F.4th 359 (6th Cir. 2022) ........................................................................... 20
*Kentucky v. Graham*,
  473 U.S. 159 (1985) ......................................................................................... 32
*Kreipke v. Wayne State Univ.*,
  807 F.3d 768 (6th Cir. 2015) ............................................................................. 4
*Kutchinski v. Cairy*,
  2022 WL 17540157 (E.D. Mich. Dec. 8, 2022) ......................................... 18, 19
*Lexington H-L Servs., Inc. v. Lexington-Fayette Urb. Cnty. Gov't*,
  879 F.3d 224 (6th Cir. 2018) ........................................................................... 15
*Lockwood v. Township of Ellington*,
  323 Mich.App. 392, 917 N.W.2d 413 (2018) ................................................... 25
*MacIntosh v. Clous*,
  69 F.4th 309 (6th Cir 2023) ......................................................................... 4, 18
*Mays v. Snyder*, 323 Mich. App. 1, 916 N.W.2d 227 (2018) ................................ 33
*McKay v. Federspiel*,
  2014 WL 7013574 (E.D. Mich. Dec. 11, 2014) ............................................... 15
*Mezibov v. Allen*,
  411 F.3d 712 (6th Cir. 2005) ................................................................. 3, 18, 19

*Miller v. City of Cincinnati*,
  622 F.3d 524 (6th Cir. 2010)................................................................. 3, 11, 14, 16
*Monell v. New York City Dept. of Social Services*,
  436 U.S. 658................................................................................................ 3, 32, 33
*Nosse v. City of Ann Arbor, Michigan*,
  2023 WL 2250621 (E.D. Mich. Feb. 27, 2023) .................................................. 14
*People v. Bartz*,
  53 Mich. 493 (1884)........................................................................................... 28
*People v. Loveridge*,
  75 Mich. 488 (1889)........................................................................................... 28
*Phelps-Roper v. Strickland*,
  539 F.3d 356 (6th Cir. 2008).............................................................................. 14
*Phillips v. DeWine*,
  841 F.3d 405 (6th Cir. 2016).............................................................................. 17
Plaintiff cites *RPF Oil Co. v. Genesee Cty.*,
  330 Mich.App. 533 (2019)................................................................................. 29
*Reform Am. v. City of Detroit, Michigan*,
  37 F.4th 1138 (6th Cir.) ..................................................................................... 16
*Richmond Newspapers, Inc. v. Virginia*,
  448 U.S. 555 (1980) ........................................................................................... 16
*Ritchie v. Coldwater Cmty. Sch.*,
  2012 WL 2862037 (W.D. Mich. July 11, 2012)................................................. 25
*Rondigo, L.L.C. v. Twp. of Richmond*,
  641 F.3d 673 (6th Cir. 2011)................................................................................ 4
*S.H.A.R.K. v. Metro Parks Serving Summit County*,
  499 F.3d 553 (6th Cir. 2007)........................................................................ 11, 17
*Scheuer v. Rhodes*,
  416 U.S. 232 (1974) ........................................................................................... 23
*Shields v. Charter Twp. of Comstock*,
  617 F. Supp. 2d 606 (W.D. Mich. 2009) ........................................................... 21
*Shimman v. International Union of Operating Eng'rs, Local 18*,
  744 F.2d 1226..................................................................................................... 35
*Smith v. City of Troy, Ohio*,
  874 F.3d 938 (6th Cir. 2017).............................................................................. 23
*Smith v. Smythe-Cramer Co.*,
  754 F.2d 180 (6th Cir. 1985).............................................................................. 34
*Spalding v. Swiacki*,
  338 Mich.App. 126, 979 N.W.2d 338 (2021) .................................................... 25
*Spectrum Health Hosps. v. Farm Bureau Mut. Ins. Co. of Michigan*,
  492 Mich. 503, 821 N.W.2d 117 (2012)............................................................ 28

*Speicher v. Columbia Tp. Bd. of Trustees*,
    497 Mich. 125 ................................................................................ 3, 25
*Sutton v. Metro. Gov't of Nashville and Davidson Cnty.*,
    700 F.3d 865 (6th Cir. 2012) ................................................................ 4
*Ter Beek v. City of Wyoming*,
    297 Mich. App. 446, 823 N.W.2d 864 (2012) ............................... 30, 31
*Thaddeus-X v. Blatter*,
    175 F.3d 378 (6th Cir. 1999) ............................................................... 18
*United States v. Johnson*,
    383 U.S. 169 (1966) ........................................................................... 20
*Ward v. Rock Against Racism*,
    491 U.S. 781, (1989) ............................................................... 3, 12, 15
*White v. Pauly*,
    580 U.S. 73 (2017) ............................................................................. 24
*Whitener v. McWatters*,
    112 F.3d 740 (4th Cir. 1997) ............................................................. 21
*Wilson v. Morgan*,
    477 F.3d 326 (6th Cir. 2007) ............................................................. 33
*Winkler v. Madison Cty.*,
    893 F.3d 877 (6th Cir. 2018) ............................................................. 33
*Yerkes v. Smith*,
    157 Mich. 557 (1909) ......................................................................... 28
*Youkhanna v. City of Sterling Heights*,
    332 F. Supp. 3d 1058 (E.D. Mich. 2018) ........................................... 10
*Youkhanna v. City of Sterling Heights*,
    934 F.3d 508 ......................................................................... 3, 12, 26

Statutes

42 U.S.C. §1983 ......................................................... 3, 22, 33, 34
42 U.S.C. §1988(b) ............................................................... 34
MCL 15.263(1) ...................................................................... 26
MCL 15.263(1), (5) ......................................................... 31, 32
MCL 15.263(5) ...................................................................... 27
MCL 15.263(6) ...................................................................... 27
MCL 15.270(2) ...................................................................... 25
MCL 15.271(1) ...................................................................... 25
MCL 15.273(1) ...................................................................... 25
MCL 125.3101 ....................................................................... 30
MCL § 15.261 ........................................................................ 24

Other Authority

1977-1978 Mich. Op. Att'y Gen. 21 (1977) ............................................................. 29

Rules

FED. R. CIV.P. 12(b)(6) ..................................................................................... 1, 2, 5

## <u>EXHIBIT LIST</u>

1. Excerpted video recording of the reading of the "disorderly" admonition at meeting commencing at 37:10 of YouTube video record, and excerpted video recording from City's official YouTube video record of relevant portion of City's Official YouTube video record, commencing 1:05:56 of YouTube video record.

2. Transcript of Exhibit 1

3. Council agenda for August 14, 2023 meeting

4. Relevant excerpts of Flint City Charter

5. City of Flint Ordinance §31-10

6. Rules Governing Meetings of the Flint City Council

7. City Council Resolution suspending Councilperson Eric Mays from attending meetings for 30 days

8. Copies of most controlling cases per court rule.

9. Unpublished cases cited in the Brief in Support of Motion to Dismiss

**BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**
<u>**PURSUANT TO FED. R. CIV.P. 12(b)(6)**</u>

## I.   INTRODUCTION

This lawsuit is part of a very local, very political, internecine power struggle, dressed up as First Amendment claims, against the current government of the City of Flint.  It is the fourth of six (6) such lawsuits filed since June 8, 2023, all filed  by the Lento Law Group[1], including the current lawsuit, which is filed on behalf of its own employee and "Community Outreach Coordinator," Plaintiff Beverly Biggs Leavy,  https://www.lentolawgroup.com/beverly-biggs.    The plaintiffs in all six cases are political adversaries of the political leadership of the City of Flint,

---

[1] Public records may be considered in a motion brought under Fed.R.Civ.P. 12(b)(6). *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017). The other five are **(1)** *Randle v. Lewis, et al*., E.D.Mich. 23-11370 filed June 8, 2023 (the complaint in that case alleges the Lento Law Group represents Mays, and that the plaintiff Randle therein is their "support staff"); **(2)** *Mays and Biggs-Leavy et al. v. City of Flint, et al*., Genesee County Circuit Court (GCCC) Case No. 23-119292-NZ, filed July 19 (Mays and plaintiff herein are co-plaintiffs in this case); **(3)** *Mays v. Flint City Council,* GCCC Case No. 23-119357, filed August 1 (challenging Mays' suspension); **(4)** *Lento Law Firm v. Lewis, et al.*  Case No. 23-20985-RMB-AMD, filed October 9, 2023, U.S. District Ct. New Jersey, in which the New Jersey office of Lento Law Group alleges defamation against several Flint, Michigan residents, including Defendant Lewis; and **(5)** *Eric Mays v. City of Flint, et al.,*  Case No. 23-12705-FKB-DRG, filed October 25, 2023, (challenging Mays' removal from the Flint City Council meeting two days before).

including Councilman Eric Mays (plaintiff in three of the six cases) or his political comrades, and the Lento law firm itself (plaintiff in the New Jersey case).

Here, Plaintiff attended a videotaped City Council meeting on August 14, 2023, disrupted that meeting (the "Meeting") and was ordered removed by Defendant.[2] Though Councilman Mays' prior 30-day suspension from attending Council meetings prevented him from participating as a councilperson during the Meeting, (Compl.¶¶ 53-54), he is present and clearly visible in the official video-recording, standing with a tripod making his own cell phone video. (Ex. 1 at 1:58.) Plaintiff's counsel herein is also visible in the video, as the Plaintiff is removed from the Meeting for disturbing decorum. (Exhibit 1 at 3:23) As was the case in *Randle*, (fn 1, *supra*) the Lento Law Group is attending City Council meetings staging events with employees, manufacturing claims for which lawsuits like this can be filed. See Defendants' Motion to Dismiss in *Randle v. Lewis, et al.*, E.D. Mich. Case No. 23-11370, Dkt. 25 PageID 522-900, at e.g., PageID539-40, 546, and Amended Complaint, Dkt 22, ¶20, PageID.460.

---

[2] The full video record of the August 14, 2023 meeting, (cited in Plaintiff's Complaint here at ¶63, fn. 1) is published on YouTube, as are all City of Flint official video records: https://www.youtube.com/watch?v=QVbJuRdJzao&t=2985s. The relevant part of the video record is filed as Exhibit 1. Transcripts of these excerpts of the Meeting are filed as Exhibit 2.

Not only are this lawsuit's origins contrived, vexatious and malevolent, the suit is legally baseless.  Plaintiff's First Amendment Counts I and II doubly fail. First, Defendant is entitled to legislative and qualified immunity from claims under 42 U.S.C. §1983.  Second, the Complaint does not plausibly allege a violation of any legal right. Flint City Council's Rules ("Council Rules") allow opportunities and mandatory procedures for orderly public comment, prohibit disruptive behavior and provide for a warning before removal.[3]  The Council Chairperson, Defendant Lewis, complied with and enforced those Council Rules.  Plaintiff chose to defy them, to speak out of order in a disruptive manner, to ignore a warning,  so even apart from immunity, Count I fails. Count II also fails because Plaintiff does not plausibly allege that removal from a single meeting is the sort of deterrent necessary to support a retaliation claim, again, immunity aside.   In Count III, alleging violation of Michigan's Open Meetings Act ("OMA"), Plaintiff simply ignores controlling Sixth Circuit authority, instead relying entirely on an unpublished Michigan  Court of Appeals case which is plainly wrong, has no precedential value and ignores directly relevant sections of the OMA.  Defendant therefore respectfully asks the Court to

---

[3] See Exhibit 3, Agenda for the 8/14/23 meeting establishing 3 minute time limits for public speaking, and Exhibit 6, Rules Governing Meetings of the Flint City Council, §7.1(II), preamble to §27 and §29 (also found at https://www.cityofflint.com/city-council/ under "Latest Documents").

dismiss all counts of the Complaint and award Defendants' their costs and reasonable fees.

## II.   <u>**STANDARD OF REVIEW**</u>

In, a 12(b)(6) motion the complaint's well-pleaded allegations are accepted as true and all reasonable inferences drawn in favor of the plaintiff. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). However, "'a legal conclusion couched as a factual allegation' need not be accepted as true." *Id.* The complaint must allege "sufficient facts that, accepted as true, 'state a claim to relief that is plausible on its face.'" *Sutton v. Metro. Gov't of Nashville and Davidson Cnty.*, 700 F.3d 865, 871 (6th Cir. 2012) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires more than mere possibility— "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Exhibits attached to a motion to dismiss may be considered "so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015) (citation omitted). Here, the Complaint cites to the entire official Meeting videotape (Compl. ¶63) and thus alleges the events at issue transpiring at the Meeting (this Brief Ex. 1 and 2). See also, See *MacIntosh v. Clous*, 69 F.4th 309, 313 (6th Cir 2023)["We take

4

judicial notice of the video recording of the public government meeting and

consider it along with the complaint and its exhibits.")

Public records may also be considered in ruling on a 12(b)(6) motion.

*Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017) (internal quotations

omitted).  Relevant public records here include Ex. 1 (official meeting video

excerpt),  Ex. 3 (Council agenda), Ex. 4 (City Charter), Ex. 5 (City Ordinance), Ex.

6 (Council Rules), and Ex. 7 (Resolution suspending Eric Mays).

### III.   <u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>[4]

1.    The City Council conducted its regular meeting and Special Affairs

meeting on August 14, 2023 and Plaintiff was in attendance. (Compl. ¶12.)

2.    Defendant Lewis was the acting chairperson of the Flint City Council

during the Meeting, (Compl. ¶¶13-14.)

3.    The Flint City Charter requires the City Council to enact ordinances

"to provide a permanent rule for the conduct of government" and to "determine its

---

[4] This statement of undisputed facts is submitted solely for purposes of this Motion
to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The numbered paragraphs are used to
align with the recommendation of this court's motion practice guidelines.

own rules of procedure." (public record, Ex. 4,[5] Flint City Charter Excerpts, §§3-301 and 3-103(b).[6]

4.     The City Council Rules provide in the preamble to §27 that the chair of a City Council meeting is responsible to maintain order, (public record, Exhibit 6), quoted here:

> (The public and City Council are both subject to the disorderly persons ordinance section 31-11[7] and the general code of conduct. Additionally, the **Chair or Presiding Officer has a responsibility and duty to enforce these rules and sanctions for the purpose of maintenance of order.  Only the Chair or Presiding Officer  may determine and rule on who/what is in or out of order.** (Emphasis supplied.)

5.     Defendant Lewis read aloud at the beginning of the Meeting the City Council's standard verbal admonition (commonly referred to as the "Disorderly") (Compl. ¶ 63 fn. 1; Ex.1 at 0:03; Ex 2 p. 2, and Agenda, Ex. 3) as follows:

> Any person that persists in disrupting this meeting will be in violation of Flint City Code Subsection 31-10, Disorderly Conduct, Assault and Battery, Disorderly Person, and will be subject to arrest for a misdemeanor. Any person who prevents the peaceful and

---

[5] All Exhibit number references are to the Exhibits filed as attachments to the Brief in Support of Defendant's Motion to Dismiss.

[6] The entire Charter is available online at https://www.cityofflint.com/wp-content/uploads/2022/04/Flint-City-Charter-Effective-1-1-2018.pdf.

[7] The citation "31-11" in the City Council Rules is a misnomer due to changes in the ordinance numbering, which change has not yet been updated in the City Council Rules.  The citation to the current applicable ordinance is 31-10, attached as Exhibit 5.

orderly conduct of any meeting will be given one warning.  If they persist in disrupting the meeting, that individual will be subject to arrest.  Violators shall be removed from the meeting.

6.     Flint City Ordinance 31-10 (public record), referred to in the reading

of the Disorderly, states in relevant part as follows (Exhibit 5.):

> *Disorderly CONDUCT*  A Person who does any of the following **IS GUILTY OF A MISDEMEANOR:** … (5) Persists in disturbing the peace and orderly conduct of any meeting of a public body or any meeting open to the general public by any conduct or communication that …prevents the peaceful and orderly conduct of the meeting after having been clearly informed that he or she is in fact unreasonably causing a disturbance.

7.     The reading of the Disorderly is required by the "Rules Governing the

Flint City Council", §7.1(II) (Ex. 6, public record):

> **Rule 7.1 The order of business at Regular Meetings of the City Council shall be as follows:…**
> **II Reading of Disorderly Persons Section**

8.     The Council Rules (public record) address "Public Meetings and

Participation" in Rules 29.1 – 29.9.  Pertinent provisions of those rules include:

> a.  **Rule 29.2**: If a member of the public wishes to address the City Council, [] [h]e or she shall submit, prior to the start of the meeting, a statement in writing containing his or her name and address and the topic to be covered.  []
>
> b.  **Rule 29.3**: [] Numbered speaker slips will be provided prior to the start of a meeting to those wishing to speak during this portion of the agenda.  No additional speakers or slips will be accepted after the meeting begins.  [].
>
> c.  **Rule 29.4**: If a member of the public is addressing the Council at a scheduled public hearing, he or she shall stand to obtain

7

recognition by the President at the opening of the hearing or at the conclusion of the remarks of the previous speaker.

9.      Plaintiff, while not authorized to speak under the Council Rules identified in ¶8, above, and while seated in the audience during the Meeting, stated as follows: "Oh, he'll be back" in reaction to a statement by one of the Councilmembers.  Ex. 1 at 2:19; Ex. 2 p. 3;  Compl. ¶55.

10.      "Oh, he'll be back" was an expression of support for "beloved" Councilman Mays, Compl. ¶¶ 54-55, 62), who at the time was serving a 30 day suspension from the Council for "conduct unbecoming a City Councilmember,"[8] but was present at the Meeting as a member of the Public.

11.      Defendant, as acting chair of the Meeting, responded to Plaintiff's outburst as follows: "Excuse me. So that is like the third time that you have spoken out."  To which Plaintiff responded, "This is no third time" and Defendant replied "That is your warning."  (Compl. ¶57; Ex. 1 at 2:20; Ex. 2 p. 3).

12.      The "warning" issued by Defendant to Plaintiff complied with the one warning requirement of the Disorderly admonition read in accordance with the City Council Rules and City Ordinance 31-10.  (Compl. ¶57; Ex. 1 2:20; and Ex. 2)

---

[8] See Council Resolution 230236, (public record), Exhibit 7.

13.     Plaintiff shouted at Defendant Lewis, with words which the transcriber could not transcribe, (Ex. 1 at 2:27; Ex. 2. p. 3) after which Defendant stated "You're out of order and you are removed from this meeting.  Metcalfe or our police please a (sic) remove her from this meeting for being disorderly (unintelligible) members will and they are not allowed to call people racist and yell out and take the floor." (Compl. ¶ 59-60; Ex. 1, *Id.*; Ex. 2 pp 3-4.)

14.     After another untranscribable comment from Plaintiff, a "thank  you" by Defendant, and another untranscribable comment from Plaintiff, Defendant said "Again, Ms.—She does not have the floor.  Please escort Ms. Beverly Biggs-Leavy out of the–out of the—out of the room because she's in violation of the disorderly persons city code."  (Compl. ¶¶ 63-64.d. fn 1; Ex. 1 at 2:58; Ex 2 p. 4).

15.     After another untranscribable statement by Plaintiff, Defendant stated "Excuse me, this is not your opportunity to talk on your way out.  Ma'am, would you please exit.  And would you please exit.  Thank you, Officer Schmidt.  Thank you for asking, Ms. Biggs-Leavy.  You will not violate the disorderly persons city code subsection.  Thank you.  Thank you so much.  Have a great evening." (Compl. ¶ 64.d. fn. 1; Ex. 1 at 3:15; Ex. 2 p. 4.)

16.     The videotape reflects that Plaintiff was removed at approximately 1 hour and 6 minutes into the Meeting.[9]

17.     Before and during the events in question, the Council Chambers were "chao[tic]." Compl. ¶ 56.

18.     Plaintiff is an employee of the law firm representing her in this case, (Lento Law Firm website, https://www.lentolawgroup.com/beverly-biggs).

IV.     **ANALYSIS**[10]

> A person may be entirely excluded from a limited public forum without violating the Constitution when the person is disruptive or wishes to speak on a topic not encompassed within the purpose of the forum.
>
> *Youkhanna v. City of Sterling Heights*, 332 F. Supp. 3d 1058, 1069 (E.D. Mich. 2018), *aff'd*, 934 F.3d 508 (6th Cir. 2019)

1. **Count 1: Plaintiff Does Not Have a First Amendment Right to Engage in Repeated Disruptive Behavior at a City Council Meeting.**

In Count I, Plaintiff complains that her First Amendment rights were violated when she was removed from a meeting of the Flint City Council because she spoke on a topic—her political support for a suspended councilmember—that

---

[9]Time 1:06 is from https://www.youtube.com/watch?v=QVbJuRdJzao&t=2985s, the official YouTube City record. Exhibit 1, as an excerpt, does not carry over the time references of the original YouTube video recording.)

[10] In compliance with this court's published rule regarding dispositive motions, the most controlling cases are attached as Exhibit 8.  Unpublished cases are attached as Exhibit 9, and no further reference to Exhibit 9 will appear herein.

was not part of the purpose of the Meeting, at a time and in a manner that was prohibited by the content-neutral rules of the Council. Common sense, case law and First Amendment doctrine all confirm that she has not stated a claim.

Plaintiff describes Count I as including both First Amendment access and expression claims. Although in some circumstances access claims and expression claims are subject to different analytic frameworks, see *S.H.A.R.K. v. Metro Parks Serving Summit County,* 499 F.3d 553, 559 (6th Cir. 2007), on these facts the distinctions collapse, as the questions of whether Plaintiff had the right to express her opinion in violation of Council Rules and whether the Council had the right to remove her from chambers for doing so, are inextricable.

*Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010) sets forth the applicable test:

> To determine the constitutionality of a government restriction on speech on publicly-owned property, we consider three questions: (1) whether the speech is protected under the First Amendment; (2) what type of forum is at issue and, therefore, what constitutional standard applies; (3) whether the restriction on speech in question satisfies the constitutional standard for the forum. *See S.H.A.R.K. v. Metro Parks Serving Summit County,* 499 F.3d 553, 559 (6th Cir.2007).

Defendants do not dispute that Plaintiff's disruptive outburst was speech under the First Amendment, but her claims do not survive the second and third steps of the analysis.

      a.    <u>A Council meeting is a designated, limited public forum.</u>

11

A Council meeting is a limited public forum. *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 518–19 (6th Cir. 2019). Therefore,

> [T]he government may regulate features of speech unrelated to its content through time, place, or manner restrictions….

> The government may also impose content-based restrictions, such as those reserving the forum or certain groups or for the discussion of certain topics, so long as they are reasonable in light of the purpose served by the forum and are viewpoint neutral . . .

*Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021) (internal quotations omitted).

b.     The Council Rules were content-neutral.

"Government regulation of expressive activity is content-neutral so long as it is *justified* without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 2754, 105 L. Ed. 2d 661 (1989) (quotation omitted, emphasis in original).

The Flint City Council has adopted content-neutral rules establishing a public comment period during which persons who registered to speak, and only those persons, were allowed to do so, in the order registered, at a single microphone speaking to the presiding officer.  Statement of Assumed Facts, ¶¶7-9. Council Rules also prohibit, among other things, disruptive behavior.  These content-neutral rules allow for an orderly public comment period, as opposed to disorderly heckling and outbursts from the audience. See *Ison, supra* at 695 ("[T]he preregistration

12

requirement . . . is a content-neutral restriction and so qualifies as a time, place, manner restriction.")

Plaintiff asserts that she need not abide by the Rules because: (i) others violated them without being removed, Compl. ¶61; and (ii) Defendant was motivated by animus. Compl. ¶ 62.  Even if her excuses were true, they are of no moment. As to the alleged animus:

> That the Board started strictly enforcing this Policy when Plaintiffs began vehemently opposing the armed staff policy may frustrate Plaintiffs, but we hesitate to 'make First Amendment-related speculations on the hidden motives of legislative bodies.'"

*Ison*, *supra*, at 896. (quoting *Ater v. Armstrong*, 961 F.2d 1224, 1229 (6th Cir. 1992)  In other words, Defendant's alleged political animus does not immunize Plaintiff from those rules, and the enforcement of those rules did not strip them of their content-neutrality. Plaintiff complied with none of the relevant rules.  Instead, she chose to shout her support for a political comrade, a topic not germane to the Meeting, and then to argue with the Defendant when directed to avoid further outbursts.

The allegation that not all audience outbursts resulted in removal likewise does not matter.  Assuming for sake of argument that such an allegation could ever matter, Plaintiff does not allege any specific persons that disrupted the Meeting, nor that political supporters of Councilman Mays (other than Plaintiff) were treated

13

differently than those that did not support him, or that any other outbursts were comparable in timing, content or tone to those of Plaintiff.  As Judge Parker recently held in the context of an equal protection claim, an allegation that unidentified others were treated differently, is a "threadbare allegation [that] falls short of the required factual pleadings to state a claim, as *Iqbal* and *Twombly* require." *Nosse v. City of Ann Arbor, Michigan*, No. CV 22-11283, 2023 WL 2250621, at *9 (E.D. Mich. Feb. 27, 2023) (citation omitted).

 c. <u>Plaintiff had other means of expression</u>

We  know from the face of the Complaint that Plaintiff has other means of expressing her support for the "beloved" Councilman Mays  and her hostility toward Defendant (e.g, Compl. ¶¶23-25).  She "is free to express her message outside of the times and places set forth in the statute, and the statute does not create a barrier to . . . use of other means to deliver her message to the public." *Phelps-Roper v. Strickland*, 539 F.3d 356, 370 (6th Cir. 2008) (Quotations omitted). "She is not entitled to her best means of communication." *Id.* at 371,

 d. <u>The Council Rules were "narrowly tailored"</u>

As noted above, a content-neutral restraint must be "narrowly tailored to serve a significant governmental interest." *Miller, supra.*  Plaintiff herself admits that there is a compelling state interest in the orderly conduct of a City Council, Compl. ¶97, so only narrow tailoring is at issue.

14

Plaintiff asserts that the Council Rules were not narrowly tailored, Compl.

¶89. Plaintiff misunderstands the narrow tailoring requirement.

> [A] regulation of the time, place, or manner of protected speech …need not be the least restrictive or least intrusive means of doing so. [T]he regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative.

*Ward*, *supra*, 491 U.S. at 798–800 (internal quotations omitted). As a corollary,

narrow tailoring "'does not turn on a judge's agreement with the responsible

decisionmaker concerning the most appropriate method for promoting significant

government interests' or the degree to which those interests should be promoted."

*Id* at 800 (citations omitted)

Further, it is not enough for Plaintiff to assert "there is some imaginable

alternative that might be less burdensome on speech." *Ward*, 491 U.S. at 797,

quotation omitted. *See also, Lexington H-L Servs., Inc. v. Lexington-Fayette Urb.

Cnty. Gov't*, 879 F.3d 224, 232 (6th Cir. 2018) (a case relied upon by Plaintiff),

("[T]he regulation will not be invalid simply because a court concludes that the

government's interest could be adequately served by some less-speech-restrictive

alternative.") Further, the Council's action was "reasonably related" to the orderly

conduct of the Meeting. The "reasonably related" standard is satisfied if the

restriction has a rational basis. *McKay v. Federspiel*, No. 14-CV-10252, 2014 WL

7013574, at *6 (E.D. Mich. Dec. 11, 2014), *aff'd* 823 F.3d 862 (6th Cir. 2016). *See also, Miller v. City of Cincinnati*, 622 F.3d 524, 539 (6th Cir. 2010).

Finally, even if the Council Rules were not content-neutral, they still pass constitutional muster so long as they serve "a compelling state interest and that its regulation is the least-restrictive manner in which that interest could have been achieved." *Reform Am. v. City of Detroit, Michigan*, 37 F.4th 1138, 1156 (6th Cir.), *cert. denied,* 143 S. Ct. 448, 214 L. Ed. 2d 255 (2022). Here, the only "less restrictive alternative" Plaintiff suggests is to "order her to remain silent." Compl. ¶98. This is an argument *ad absurdum*. Plaintiff was warned and she ignored the warning. Certainly, not enforcing the law is less restrictive to the law-breaker than enforcing it, but that is not what the First Amendment requires.

e.   The Complaint applies the wrong First Amendment analytic framework

Plaintiff's Complaint-*cum*-Brief argues that the case should be assessed under the analytic framework developed in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575-80 (1980) under an "experience and logic" test, (Compl ¶ 70). *See generally*, Compl. ¶¶68-87. But that line of cases applies to the right to *access criminal and quasi-criminal* proceedings. The Complaint does not cite a single case applying the *Richmond Newspaper* framework outside that context. .

16

Plaintiff's failure to cite relevant case law is not an oversight. In *S.H.A.R.K. v. Metro Parks Serving Summit County,* 499 F.3d 553, 559 (6th Cir. 2007), the court held that the *Richmond Newspapers* framework was not the proper framework outside its narrow context. *Id.* at 560. n.2. *Phillips v. DeWine*, 841 F.3d 405, 417-418 (6th Cir. 2016) reaffirmed this, describing the *Richmond Newspapers* framework as "an exception to [the] general rule," and rejecting plaintiff's argument that under *Free Press v. Ashcroft*, 303 F.3d 681, 695 (6th Cir. 2002), *Richmond Newspapers* was the generally applicable framework.

## 2.     Count II: The Retaliation Claim Fails

In Count II, Plaintiff, a "community organizer,"[11] Compl. ¶23, alleges that she was removed in retaliation for her support of the attempted recall of Defendant Lewis and for voicing support for Councilman Eric Mays, a political adversary of Defendant.  *Id.* ¶62. Plaintiff alleges, in formulaic terms, that "adverse action was taken against Plaintiff by Defendant Lewis that would deter a person of ordinary firmness from continuing to engage in such constitutionally protected conduct." *Id*. ¶105,  She does not allege she suffered any damages.[12]

---

[11] Plaintiff is employed as Plaintiff's counsel's "Community Outreach Coordinator." https://www.lentolawgroup.com/beverly-biggs

[12] Plaintiff seeks damages in her Prayer for Relief, but never alleges that she suffered such damages.

To state a retaliation claim, Plaintiff must plausibly allege:

> (1) that she engaged in First Amendment protected activity; (2) that [defendant] undertook "an adverse action" that would deter "a person of ordinary firmness from continuing to engage in that conduct"; and (3) that there is a "causal connection" between [plaintiff's] protected activity and [defendant's] adverse action. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*) (per curiam).

*MacIntosh*, *supra*,  69 F.4th at 315.  In addition, a damage claim requires that the adverse action resulted in "a 'specific' or 'concret[e]' personal injury… [D]amage to…professional reputation and emotional anguish and distress,'…[is] insufficient…" *Mezibov v. Allen*, 411 F.3d 712, 722 (6th Cir. 2005).

As *Mezibov* and this Court's recent opinion in *Kutchinski v. Cairy*, No. 22-10045, 2022 WL 17540157 (E.D. Mich. Dec. 8, 2022) make clear, Plaintiff's allegation (¶105) that removal from a single council meeting would deter "a person of ordinary firmness in Plaintiff's position from continuing to exercise her First Amendment rights" is implausible.  Thus, dismissal pursuant to Rule 12(b)(6) is proper.

*Mezibov*, a defamation claim concerning critical comments about a lawyer's legal skills, held that the court must "'tailor [its]' analysis under the 'adverse action' prong to the circumstances of this specific retaliation claim." *Mezibov v. Allen*, supra at 721, quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (*en banc*).  It held that plaintiff had failed to state a claim because "we

are not persuaded that a criminal defense attorney of ordinary firmness would be

deterred from vigorously defending his clients as a consequence of the alleged

defamation in this case." *Id.* at 722. *Mezibov* also explained that the court "must

be careful to ensure that real injury is involved, lest we trivialize the First

Amendment by sanctioning a retaliation claim even if it is unlikely that the

exercise of First Amendment rights was actually deterred." *Id.* (internal quotation

omitted).

This Court undertook that inquiry in its recent *Kutchinski* decision, in which

plaintiff, a parent of high school student contesting a suspension,  argued that being

subject to inquiries from other parents would deter a person of ordinary firmness.

This Court began its assessment of the plausibility of the retaliation claim by

cataloguing the Sixth Circuit case law in which the "person of ordinary firmness"

standard was found to be satisfied:

> disclosing humiliating and confidential details of an incident like a
> rape, failing to investigate a crime, encouraging a citizen's employer
> not to renew their contract, delaying the renewal of a permit, filing
> suit against a citizen, or falsely reporting stalking allegations . . . .

*Id.* at *7.  The court then Kutchinski's claim pursuant to Rule 12(b)(6), because the

alleged retaliation did not satisfy the "person of ordinary firmness" standard.

As in *Mezirov*, the question here is whether a community organizer with a

history of involving herself in recall campaigns and speaking at Council meetings

would be deterred from continuing to do so by being removed from a single Council meeting and whether that removal was the type of adversity which the Sixth Circuit has found sufficient to plausibly allege a retaliation claim. The answer under *Mezibov* and *Kutchinski* is clearly no. Plaintiff here does not even allege "mental anguish and suffering," let alone tangible harm. As a matter of law, Plaintiff has failed to allege action by the Defendant that would deter a person of ordinary firmness from continuing her political activities. The claim should be dismissed.

**3.     Absolute Legislative Immunity Bars Plaintiff's Federal Claims**

Defendant Lewis is entitled to absolute legislative immunity on the federal claims because "local legislatures are . . . absolutely immune from suit under §1983 for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). Immunity is to be applied "broadly to effectuate its purposes." *Kent v. Ohio House of Representatives Democratic Caucus*, 33 F.4th 359, 368 (6th Cir. 2022), *quoting United States v. Johnson*, 383 U.S. 169, 180 (1966). Immunity applies even if the legislator's actions were erroneous, malicious, corrupt, *Bogan*, at. 50, or as Plaintiff alleges at ¶100, "retaliatory, content-based, . . . capricious, vindictive and despotic."

Immunity applies to a retaliation claim (Count II) just as it does to a direct infringement claim (Count I). Indeed, *Bogan* itself involved a claim that defendant was "motivated by racial animus and a desire to retaliate against her for exercising

her First Amendment rights". *Bogan, supra*, at 47. *See also*, *Collins v. Vill. of New Vienna*, 75 F. App'x 486, 488 (6th Cir. 2003) ("In *Bogan*, the Court concluded that defendant local officials were entitled to absolute immunity where they abolished plaintiff's job by passing a city ordinance with prospective implications beyond the current employee, despite evidence that the act was retaliatory and specifically targeted at plaintiff".)

Absolute legislative immunity applies if: (i) "the activities took place in a session of the [legislative body] by one of its members in relation to the business before it"; and (ii) "the activities are an integral part of the deliberative and communicative processes by which Members participate in [legislative] proceedings . . .". *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 503-04 (1975) (internal quotation omitted). *See also,* ; *Whitener v. McWatters*, 112 F.3d 740, 744-745 (4th Cir. 1997) (absolute legislative immunity protected legislative action "enforcing decorum"); *Guindon v. Twp. of Dundee, Mich*., 488 F. App'x 27, 34 (6th Cir. 2012) (decision to exclude plaintiff from the Council agenda was protected by legislative immunity); *Shields v. Charter Twp. of Comstock*, 617 F. Supp. 2d 606, 613 (W.D. Mich. 2009)*,* (Not allowing board member to speak during public comment portion of meeting "fit comfortably within the scope of the reasonable time, place, and manner restrictions routinely upheld as part of a public body's authority to regulate its own meetings.") This is at the heart of Judge

21

Goldsmith's opinion in *Davis v. Detroit Pub. Schools Community Dist.*, 17-CV-12100, 2017 WL 3129838 (E.D. Mich. July 24, 2017), *aff'd*, 899 F.3d 437 (6th Cir. 2018), in which the Court dismissed Plaintiff's claim because "[c]ase law permitting reasonable restrictions on the time, place, and manner of speech would mean very little if the public body was not entitled to enforce those restrictions." *Id.* at *9.

Plaintiff alleges, without apparent irony, that City Council meetings are "dysfunction[al]", and that "complete and utter chaos…unfolds at nearly every Council meeting", Compl. ¶¶2–3. This further demonstrates the need to enforce rules against disruptive behavior at Council meetings. Defendant is therefore entitled to absolute legislative immunity from all claims arising under 42 U.S.C. §1983.

**4.      Section 1983 Qualified Immunity Also Bars Plaintiff's Federal Claims**

Qualified immunity shields government officials from claims under 42 U.S.C. §1983, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Implicit in the idea that officials

22

have some immunity - absolute or qualified - for their acts, is a recognition that they may err." *Scheuer v. Rhodes*, 416 U.S. 232, 242 (1974).[13]

To overcome qualified immunity, a plaintiff must (1) plausibly allege a violation of a particularized Constitutional right and (2) show that the right was "clearly established at the time of the harm giving rise to the action." *Bible Believers v. Wayne County*, 805 F.3d 228, 257 (6th Cir. 2015). This is a "question[] of law for the court." *Smith v. City of Troy, Ohio*, 874 F.3d 938, 944 (6th Cir. 2017). "Clearly established" law means case law of the Supreme Court and, perhaps, controlling authority from the Sixth Circuit. *See also, City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 614 (2015) ("[E]ven if a controlling circuit precedent could constitute clearly established federal law in these circumstances . . . ") (internal quotation omitted).

Further, a clearly established right must be identified in more than a generalized sense. *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). "[F]or a right to be fairly established, existing precedent must have placed the statutory or

_____

[13] Although §1983 qualified immunity is a defense, it is properly addressed on a Rule 12(b)(6) motion. As explained in *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021), "a plaintiff bears the burden of overcoming qualified immunity." Further, "the validity of [a qualified immunity] defenses may be apparent from the face of the complaint, rendering a motion to dismiss appropriate. . . . This is, after all, how we normally adjudicate other affirmative defenses on motions to dismiss." *Id.* at 763.

constitutional question beyond debate," *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation omitted), and must "squarely govern[] the specific facts at issue." *City of Escondido, California v. Emmons*, 586 U.S. __, 139 S. Ct. 500, 503 (2019). In addition, "[w]hen public officials implement validly enacted state laws . . . their conduct typically satisfies the core inquiry—the 'objective reasonableness of an official's conduct'—that the immunity doctrine was designed to test." *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440-41 (6th Cir. 2016) (quoting *Harlow, supra* at 818).

For the reasons explained above, it is indisputable that there is no established constitutional right to interrupt a local governmental proceeding, or to be free of the consequences of doing so. Therefore, the Defendant Lewis is entitled to qualified immunity on Counts I and II.

**5.     Count III: under The Michigan Open Meetings Act, Must Be Dismissed.**

Count III alleges Defendant Lewis violated Michigan's Open Meetings Act (OMA), MCL § 15.261, *et seq*. by removing Plaintiff from the Meeting after Defendant Lewis, as Council chairperson, warned Plaintiff not to speak out from the audience during the Council Meeting and Plaintiff failed to respect that warning by continuing to shout from her seat.   (Am. Comp. ¶¶55-57, 59, 112-113).

a.    Plaintiff is not entitled to relief because the Complaint does not allege
an intentional violation of the OMA.

Under the OMA, a private litigant may:

(1) seek to compel compliance with OMA or enjoin further
noncompliance (MCL 15.271(1)); (2) seek actual and exemplary
damages against a public official for ***intentional*** violations of OMA
(MCL 15.273(1)); or (3) seek to have the decision of a public body
invalidated on the grounds that it was not made in conformity with
the OMA (MCL 15.270(2)).

*Lockwood v. Township of Ellington*, 323 Mich.App. 392, 402, 917 N.W.2d 413

(2018) (citations omitted, emphasis supplied). The remedies prescribed by the

OMA are exclusive.  *Speicher v. Columbia Tp. Bd. of Trustees*, 497 Mich. 125,

136, 860 N.W.2d 51 (2014), (citations, quotation marks, and brackets omitted).

Here, the sole relief Plaintiff seeks is damages (Compl. Prayer for Relief).

But damages are available only if Defendant acted with the specific intent to

violate the OMA. *Ritchie v. Coldwater Cmty. Sch.*, No. 1:11-CV-530, 2012 WL

2862037, at *22 (W.D. Mich. July 11, 2012). *See also*, *Spalding v. Swiacki*, 338

Mich.App. 126, 138, 979 N.W.2d 338 (2021) (OMA does not allow damages for

negligent violations).  Plaintiff has not and could not plausibly allege that

Defendant acted with specific intent, where the Defendant was authorized to act,

plainly was acting, and stated aloud she was acting in accordance with local law.

The OMA claim fails.

25

     b.    <u>The Council's enforcement of its disorderly conduct rule is not contrary to or preempted by the OMA.</u>

           *i   Plaintiff ignores controlling Sixth Circuit law*

Plaintiff's contention that Defendant violated OMA by removing her from the meeting in accordance with the Council Rules is contrary to controlling Sixth Circuit law set forth in *Youkhanna*.  There, the court held that the OMA "clearly" permitted a City Council to remove the audience from a council meeting in response to an "audience-wide uproar," 934 F.3d at 522, because, "[i]t is common sense that a government body should be allowed to remove people who are disrupting a public meeting, and the Michigan Open Meetings Act allows for such a removal." *Id. at* 523.  *Youkhanna*, requires dismissal of Count III.

           *ii   Plaintiff ignores the text of the OMA and instead relies on an unsound definition of "breach of the peace"*

Three sections of the OMA bear on the application of the statute to Plaintiff's conduct here.  First, under MCL 15.263(1):

> All meetings of a public body must be open to the public . . .. However, **a public body may establish reasonable rules and regulations in order to minimize the possibility of disrupting the meeting.**  (Emphasis supplied.)

Thus, the public's right to access is subject to the public body's right to minimize the possibility of disruption through reasonable rules and regulations.  Second, speaking may be restricted to particular times:

> (5) A person must be permitted to address a meeting of a public body under rules established and recorded by the public body. The legislature or a house of the legislature **may provide by rule that the right to address may be limited to prescribed times at hearings and committee meetings only**.(Emphasis supplied.)

MCL 15.263(5). Here, the City Council provides an opportunity for public comment at every meeting, and did so on August 14, 2023. *See* Meeting Agenda, Ex. 3. The City Council Rules provide public speaking is limited to certain times pursuant to established procedure. See Council Rules, Ex. 6, §29. Finally, MCL 15.263(6), states "A person must not be excluded from a meeting otherwise open to the public except for a breach of the peace actually committed at the meeting."

Plaintiff relies on a single unpublished, never cited, case, *Cusumano v. Dunn*, 2020 WL 5079615 (August 27, 2020), to argue that her conduct was not of the "type, caliber, nature, or quality" that could qualify as a breach of the peace under the OMA and, thus that her removal violated the OMA. Compl. ¶ 123. She further contends that City Ordinance 31-10 (incorrectly cited in the Complaint as "31-12") is preempted because it conflicts with the meaning of "breach of the peace" in the OMA.

*Cusumano*, *supra*, stated,

> [A] "breach of the peace" constitutes seriously disruptive conduct involving abusive, disorderly, dangerous, aggressive, or provocative speech and behaviors tending to threaten or incite violence.

27

*Id.* at *7. *Cusumano*'s interpretation of "breach of the peace" is rooted in cases, largely a century or more old, regarding criminal violations.[14]

Cusumano's  interpretation runs afoul of virtually every rule of statutory construction. First, "breach of the peace" is undefined, so it is to be given its common dictionary definition. *Spectrum Health Hosps. v. Farm Bureau Mut. Ins. Co. of Michigan*, 492 Mich. 503, 515, 821 N.W.2d 117, 124 (2012). The pertinent dictionary definition of "breach of the peace" is: **"Law -- Any unnecessary disturbance of the public peace"**, Webster's New World Dictionary, Second College Edition (1980).  Plaintiff's shouting at the Meeting Chair, outside of the established time for public comment, after a warning, and on a topic not germane to any matter before the Council, and her continued shouting after receiving the Defendant's verbal warning, was plainly both unnecessary and a disturbance,

Second, statutes are to be interpreted to give effect to every provision. *Danse Corp. v. City of Madison Heights*, 466 Mich. 175, 182, 644 N.W.2d 721, 726 (2002). Here, that means that "breach of the peace" must be interpreted consistently with the express statutory right of public bodies to adopt, and by

---

[14] *See Davis v. Burgess*, 54 Mich. 514, 517–18, 20 N.W. 540, 542 (1884); *People v. Bartz*, 53 Mich. 493, 495 (1884); *People v. Loveridge*, 75 Mich. 488, 491-494 (1889), *Yerkes v. Smith*, 157 Mich. 557, 560 (1909).

28

implication enforce, reasonable rules and regulations, including those limiting public speaking to "prescribed times". *Accord*, 1977-1978 Mich. Op. Att'y Gen. 21 (1977) (Opining that both the provision regarding breach of the peace and that regarding the right to adopt reasonable rules and regulations "must be given effect"). That can be done by interpreting "breach of the peace" under the OMA to include the violations of "reasonable rules and regulations [that] minimize the possibility of disrupting the meeting" and limiting public speaking to "prescribed times." *Cusumano* instead interpreted breach of the peace in a manner that eviscerates the Council's ability to enforce reasonable rules and regulations. *Cusumano, supra,* p. 6, n. 4.

Third, statutes are to be interpreted to reflect the legislative intent. *Danse Corp, supra.*  By looking to 19th Century criminal case law, *Cusumano* implicitly suggests that the OMA precludes removal of a disruptive audience member unless the member was guilty of a crime. Nothing suggests that the Legislature, with century- old criminal cases in mind, intended to allow removal for disruptive violation of lawful rules only if that disruptive behavior was criminal and jail-worthy.

### iii     *City Ordinance 31-10 is not preempted by the OMA.*

Plaintiff cites *RPF Oil Co. v. Genesee Cty.*, 330 Mich.App. 533, 538-9 (2019) to argue that, based on *Cusumano,*  Flint's Ordinance 31-10 is inconsistent

with and thus preempted by the OMA. (Compl. ¶114.) For the reasons explained above, *Cusumano* is not precedential and is bad law, so the issue is moot. However, even if *Cusmano* were not bad law, the preemption argument fails.

While *RPF* recites the basic legal standard, more recent Michigan Supreme Court and Eastern District of Michigan opinions establish the current state of the law. In *DeRuiter v. Twp. Of Byron*, 505 Mich. 130, 139, 949 N.W.2d 91 (2020) the Court noted that "[w]hether a state statute preempts a local ordinance is a question of statutory interpretation and, therefore, a question of law that we review de novo", citing its seminal preemption opinion, *Ter Beek v. City of Wyoming*, 297 Mich. App. 446, 452, 823 N.W.2d 864 (2012), aff'd 495 Mich. 1, 846 N.W.2d 531 (2014). "Conflict preemption applies if 'the ordinance is in direct conflict with the state statutory scheme.'" *DeRuiter* at 140. Both *DeRuiter* and *Ter Beek* involved alleged conflicts between local regulations and Michigan marijuana laws. *DeRuiter* held that geographical limitations did not conflict with the Michigan Medical Marijuana Act (MMMA):

> We therefore hold that the MMMA does not nullify a municipality's inherent authority to regulate land use under the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq.*, so long as the municipality does not prohibit or penalize all medical marijuana cultivation...and so long as the municipality does not impose regulations that are "unreasonable and inconsistent with regulations established by state law."

30

Id. at 147-48.  In a second case rejecting a preemption challenge, *Attitude*

*Wellness, LLC v. Village of Pinckney*, 606 F.Supp 3d 624, 634 (E.D.Mich. 2022),

Judge Drain, citing *Ter Beek*, acknowledged the applicable legal standard that

"[m]unicipal laws must be 'in direct conflict with'" state law for preemption to

apply, and that "[d]irect conflicts arise where 'the ordinance permits what the

statute prohibits or the ordinance prohibits what the statute permits….'".  But the

court also recognized the importance of local government autonomy when

assessing whether there is "direct conflict" between a state statute and local

ordinance:

> Courts afford substantial deference to Michigan's local governments
> when construing municipal ordinances. …. The Michigan Supreme
> Court has emphasized how municipalities maintain great[ ] latitude
> to conduct their business…

*Id*. at 634, quotation omitted,  Judge Drain then found that "[n]othing in the

MRTMA's plain language signals the legislature's intent to cabin municipal

discretion. Indeed, the statute explicitly instructs municipalities to decide who is

best suited to operate a lawful cannabis business in their communities."  *Id.*

Likewise, here, the OMA specifically authorizes local governing bodies to

"establish reasonable rules and regulations in order to minimize the possibility of

disrupting the meeting" and to limit an attendee's right to speak "to prescribed

times at hearings and committee meetings only."  MCL 15.263(1), (5).  Flint's

ordinance addresses precisely the issues the OMA allows it to address (if a person

"persists in disturbing the peace" or "prevents the peaceful and orderly conduct of

the meeting after having been clearly informed"). Ex. 5.  The ordinance does not

prohibit conduct that the OMA permits,  because the OMA permits local

governments to establish rules to minimize disruption and to limit the right to

speak to certain times.  MCL 15.263(1), (5).  The Flint City Council did so, Ex. 6,

§29, *supra*. Thus, there is no preemption.

In sum, the Defendant Lewis' actions were consistent with the Council's

right to adopt and enforce reasonable rules and regulations, and the authority given

to her to decide when its rules of decorum have been violated. Ex. 6 §§27, 29,

*supra*. Thus, Defendant Lewis did not violate the OMA.

### 6.   The Official Capacity Claims Should Be Dismissed because the City is the real-party-in-interest.

Plaintiff sues Defendant in both her individual and official capacity.  Official

capacity claims are treated as a claim against the individual's governmental

employer. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55

(1978) [official capacity suits "represent only another way of pleading an action

against an entity of which an officer is an agent."] See also *Kentucky v. Graham*,

473 U.S. 159, 165–66 (1985) ["It is *not* a suit against the official personally, for the

real party in interest is the entity..."]. *Monell* holds that a municipality may be held

32

liable under §1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell,* 436 U.S. at 694. [15]

To invoke *Monell*, a plaintiff must show that that municipal policy caused the alleged violation by identifying "(1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations." *Winkler v. Madison Cty.*, 893 F.3d 877, 901 (6th Cir. 2018). In the absence of a valid underlying constitutional violation, there can be no municipal liability. *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007). As established above, there are no valid underlying constitutional violations. Nor has Plaintiff alleged the existence of any city rule, law or policy to implicate *Monell* liability. There can thus be no

---

[15] Notably, Defendant has not located any cases that permit suit against municipal employees in their "official capacities" for state law claims (as distinguished from federal Constitutional claims under 42 U.S.C. §1983), such as Plaintiff's OMA claim here. See, *Genuine Solutions Counseling Center, P.L.L.C. v. Governor Gretchen Whitmer,* No. 21-000185-MM, 2022 WL 17997591, at *4 (Mich. Ct. Cl. Apr. 13, 2022) (official capacity concept is related to federal 42 USC §1983 claims) and *Mays v. Snyder*, regarding claims against state (not municipal) officials in their official capacity for state constitutional claims, not at issue here. 323 Mich. App. 1, 87, 916 N.W.2d 227 (2018).

liability for the City of Flint, under 42 U.S.C. 1983 under an "official capacity"

theory.

**7.     Costs and Attorneys' Fees Should Be Awarded Because This Action Is Frivolous, Unreasonable, Without Foundation, and Has Been Brought In Bad Faith**

42 U.S.C. §1988(b) allows a court to award a prevailing party in a §1983

action their costs and reasonable attorneys' fees if the plaintiff's action was

"frivolous, unreasonable, or without foundation, even though not brought in

subjective bad faith." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980). In applying this

standard, the Sixth Circuit has instructed that:

> While a showing of bad faith is not required for an award of attorneys fees to a prevailing defendant, such a showing would justify an award of fees. Additionally, courts have awarded attorneys fees to prevailing defendants where no evidence supports the plaintiff's position or the defects in the suit are of such magnitude that the plaintiff's ultimate failure is clearly apparent from the beginning ….

*Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985). Where a Plaintiff

alleges frivolous and non-frivolous claims, "a court may grant reasonable fees to

the defendant in this circumstance, but only for costs that the defendant would not

have incurred but for the frivolous claims." *Fox v. Vice*, 563 U.S. 826, 829 (2011).

Secondly, this court "has inherent equitable power to award attorneys' fees

for "bad faith" or frivolous conduct of a case." *In re: Ruben*, 825 F.2d 977, 983 (6th

Cir. 1987).

There are only two aspects of the "bad faith" rule implicated by the district judge's opinion imposing sanctions here—"(1) bad faith occurring during the course of the litigation; [and] (2) bad faith in bringing [the] action or causing [the] action to be brought...."

*Id., citing Shimman v. International Union of Operating Eng'rs, Local 18,* 744 F.2d 1226, 1228–30 & nn. 5, 6 (6th Cir.1984) (collecting cases), *cert. denied,* 469 U.S. 1215 (1985).  Here, the Complaint asserts frivolous and unreasonable allegations, and disregarding absolute immunity defenses Defendant thus respectfully requests that this Court not only dismiss all Counts of Plaintiff's Complaint, but award Defendant her costs and reasonable attorneys' fees incurred because of having to defend against this suit.

## V.   <u>CONCLUSION</u>

For the reasons set forth above, Defendant respectfully requests that this Court dismiss the Complaint and award Defendant all her costs and attorney fees, plus such other and further relief as this Court deems proper.

Dated: November 13, 2023

BUTZEL LONG, PC
By: *<u>/s/ Frederick A. Berg</u>*
Frederick A. Berg (P38002)
Sheldon H. Klein (P41062)
150 W. Jefferson Suite 100
Detroit, MI 48226
(313) 225-7000
berg@butzel.com
klein@butzel.com
Attorneys for Defendant

35

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2023, I electronically filed the above document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

BUTZEL LONG, PC

By: <u>*/s/ Frederick A. Berg*</u>

Frederick A. Berg (P38002)
Sheldon H. Klein (P41062)
150 W. Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
berg@butzel.com
klein@butzel.com
Attorneys for Defendant