UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEVERLY BIGGS-LEAVY,

       Plaintiff,

v.

LADEL LEWIS,

       Defendant.

_____/

Case No. 23-cv-12123

Hon. Sean F. Cox
United States District Court Judge

## OPINION & ORDER GRANTING IN PART DEFENDANT'S MOTOIN TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

The plaintiff in this case claims that a city councilwoman unlawfully removed her from a city council meeting and the plaintiff seeks to recover from the councilwoman in her individual and official capacities under 18 U.S.C. § 1983 for violating the plaintiff's First Amendment rights.  The plaintiff also asserts a state-law claim against the defendant under Michigan's Open Meetings Act.  Because the councilwoman lawfully removed the plaintiff from the meeting after she violated a restriction on disruptive conduct, the Court dismisses the plaintiff's First Amendment claims and declines supplemental jurisdiction over her state-law claim.

## BACKGROUND

Plaintiff Beverly Biggs-Leavy brings suit against Defendant Ladel Lewis, who was the vice president of the city council of Flint, Michigan ("Flint City Council") at all times relevant to this action.  Plaintiff seeks to recover from Defendant for her removal of Plaintiff from a public meeting of the Flint City Council on August 13, 2023 (the "Meeting"), which Defendant chaired.

Counts I and II of the Complaint assert First Amendment claims against Defendant under 18 U.S.C. § 1983 in her individual and official capacities.  Count I alleges that Defendant's

removal order violated Plaintiff's First Amendment right to access the Meeting (Count I.A) and alternatively Plaintiff's First Amendment right to speak at the Meeting (Count I.B). And Count II alleges that Defendant's removal order was an unlawful adverse action in retaliation for Plaintiff's exercise of her First Amendment rights at the Meeting.

Count III, Plaintiff's state-law claim, asserts that Defendant's removal order violated Michigan's Open Meetings Act, which requires that "[a]ll meetings of a public body . . . be open to the public and . . . held in a place available to the general public." Mich. Comp. Laws Ann. § 15.263(1) (West, Westlaw through 2024 Pub. Act 11). The Act further requires that "[a]ll persons . . . be permitted to attend any meeting except as otherwise provided in this act." *Id.*

## I.    Procedural History

The Complaint was electronically filed in this Court on August 17, 2023, and was signed by Plaintiff's attorneys. (ECF No. 1). On November 13, 2023, Defendant electronically filed a motion to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6). (ECF No. 11). On November 15, 2023, the Court set a deadline of twenty-one days for Plaintiff to respond to Defendant's motion to dismiss or else amend the Complaint. (ECF No. 12).

This Court maintains electronic case files ("ECF"). U.S. Dist. Ct. E. Dist. Mich., *Electronic Filing Policies and Procedures*, r. 1(c) (2023), https://www.mied.uscourts.gov/pdffiles /policies_procedures.pdf [https://perma.cc/48LA-9CRU]. Attorneys who utilize the Court's ECF system are "responsible for maintaining valid and current contact information in his or her PACER account." *Id.* r. 3(d). When a document is filed electronically using the Court's ECF system, a notice is sent to the e-mail address listed in PACER for "all filing users associated with that case." *Id.* r. 9(b).

Plaintiff did not respond to Defendant's motion to dismiss or amend the Complaint before this deadline, and the Court ordered Plaintiff to show cause.  (ECF No. 13).  Plaintiff responded to the Court's show-cause order and requested leave to amend the Complaint.  (ECF No. 14).  In that response, Plaintiff's attorneys stated that they had not received electronic notice of Defendant's motion to dismiss.

The Court then granted Plaintiff leave to amend the Complaint on or before January 10, 2024 (ECF No. 16), but Plaintiff did not amend the Complaint or respond to Defendant's motion to dismiss before this deadline.  The Court subsequently closed briefing on Defendant's motion to dismiss.  (ECF No. 17).  The Court now rules on Defendant's motion to dismiss without a hearing pursuant to E.D. Mich. L.R. 7(f)(2) and grants it in part for the reasons discussed below.

## II.     Factual Background

As a preliminary matter, Defendant urges the Court to consider documents that are not attached to the Complaint but that she attached to her motion to dismiss.  The Court will consider Exhibits 1, 4, and 5 to Defendant's motion to dismiss.

The Sixth Circuit "ha[s] taken a liberal view of what matters fall within the pleadings for the purposes of Rule 12(b)(6)."  *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001).  To that end, "[i]f referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings."  *Id.*  And "courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."  *Id.*

Defendant asserts that Exhibit 1 to her motion to dismiss is an "excerpted video recording from [the] City [of Flint]'s official YouTube video record."  (ECF No. 11-1; *see also* Def.'s Ex. 1, ECF No. 11-2).  And the Complaint cites a URL that points to a YouTube video and alleges that this video recording of the Meeting "made publicly available on the [Flint] City Council's

YouTube channel."  (ECF No. 1, PageID.12); *see also* SpectacleTVs-Flint City Council Meetings, *081423-2-Flint City Council*, YouTube (Aug. 14, 2023), https://www.youtube.com/watch?v=QVbJuRdJzao [https://perma.cc/V35C-BNQM] (URL cited in the Complaint).

Having reviewed Exhibit 1 and the YouTube video cited in the Complaint, Exhibit 1 contains an excerpt of the same footage that appears in the YouTube video.  *See* SpectacleTVs-Flint City Council Meetings, *supra*, at 37:07.  Thus, the Complaint refers to Exhibit 1 and, as discussed below, is central to Plaintiff's claims.  Consequently, the Court considers Exhibit 1 as part of the pleadings.

Defendant alleges that Exhibit 5 depicts a prohibition on disorderly conduct that has been enacted by the Flint City Council.  (*See* Def.'s Ex. 5, ECF No. 11-6).  And the Complaint states, "As justification for her removal of Plaintiff [from the Meeting], Defendant Lewis explained that Plaintiff was being removed . . . for violating 'the disorderly person City Code subsection.'" (ECF No. 1, PageID.22).

Having reviewed Exhibit 5, the Court finds that it is a copy of Ordinance No. 4071 of the Flint City Council, which amended section 31-10 of the Code of the City of Flint, Michigan ("Flint City Code").  And section 31-10 of the Flint City Code is entitled "DISORDERLY CONDUCT, ASSAULT AND BATTERY, AND DISORDERLY PERSONS."  (ECF No. 11-6, PageID.279).  Thus, the Court finds that the Complaint refers to section 31-10 of the Flint City Code, and, as explained below, section 31-10 of the Flint City Code is central to Plaintiff's claims.  Consequently, the Court will consider Exhibit 5 to form part of the pleadings.

The Court also considers Exhibits 6 to form part of the pleadings because it contains a public record.  (*See* Def.'s Ex. 6, ECF No. 11-7).  Having reviewed Exhibit 6, the Court finds

that it is a copy of the Flint City Council's rules of procedure.  And in the absence of any indication to the contrary, the Court presumes that the Flint City Council's rules of procedure are a matter of public record.  Thus, the Court considers Exhibit 6 to form part of the pleadings.

### A.    The Complaint

The facts alleged in the Complaint are as follows.  Plaintiff is a community organizer in the City of Flint, Michigan, and was working on an effort to recall Defendant from her position on the Flint City Council when the Meeting took place on August 13, 2023.  Defendant chaired the Meeting, which was open to the public.  Another member of the Flint City Council, Eric Mays, was serving a 30-day suspension from the Council at the time of the Meeting.

At the close of the Meeting, the Flint City Council permitted attendees to offer public comments.  At some point during the public comment portion of the Meeting, Council members debated whether a public commenter had the Council's rules of procedure.  During this debate, a Council member discussed Councilman Mays's suspension from the Council and concluded, "And that's why he's (Mays) not here now."  (ECF No. 1, PageID.10).  Plaintiff, who had not yet spoken at the Meeting, exclaimed from the crowd, "Oh, he'll be back."  (*Id.*).

Defendant then stated to Plaintiff, "Excuse me, so that is like the third time that you have spoken out.  That is your warning."  (*Id.*).  Plaintiff "voic[ed] her objection Defendant Lewis' salacious remark" and Defendant responded, "You are out of order, and you are removed from this meeting."  (*Id.* at 10, 11).  Plaintiff was then escorted from the Meeting by a Flint Police Department officer.

"As justification for her removal of Plaintiff, Defendant Lewis explained that Plaintiff was being removed from the meeting for violating 'the disorderly person City Code subsection.'"  (*Id.* at 22).  Defendant also "tip[ped] her hand to the fact that she did, in fact, know precisely

who Plaintiff was" because Defendant stated to the police officer, "Please escort Mrs. Beverly Biggs-Leavy out of the room."  (*Id.* at 11).

**B.    Defendant's Exhibits**

The facts alleged in the exhibits attached to Defendant's motion to dismiss are as follows. The Flint City Council has promulgated rules of procedure, and these rules provide that members of the public who do not properly register to speak at public meetings "shall not be permitted to continue at the same meeting except on leave of the Council."  (ECF No. 11-7, PageID.297).

The Flint City Council's rules also regulate conduct by meeting attendees regardless of whether they are registered to speak.  Specifically, "[t]he public and the [Flint] City Council are both subject to the disorderly persons ordinance section 31-11," which is currently codified at section 31-10 of the Flint City Code.  (*Id.* at 296).

Section 31-10 of the Flint City Code prohibits, *inter alia*, "[p]ersist[ing] in disturbing the peace and orderly conduct of any meeting of a public body or any meeting open to the general public by any conduct or communication that . . . prevents the peaceful and orderly conduct of the meeting after having been clearly informed that he or she is in fact unreasonably causing a disturbance."  (ECF No. 11-6, PageID.279).

The Flint City Council's rules further provide that "the Chair or Presiding Officer has a responsibility and duty to enforce [the] rules and sanctions" provided for in the Flint City Council's rules "for the purpose of maintenance of order."  (ECF No. 11-7, PageID.296).  And "[o]nly the chair or Presiding Officer may determine and rule on who/what is in or out of order."

The Flint City Council's rules do not provide a sanction for violating section 31-10 of the Flint City Code, but Defendant gave the following verbal admonition at the beginning of the Meeting:

> Any person that persists in disrupting this meeting will be in violation of Flint City Code subsection 31-10, disorderly conduct, assault and battery, disorderly person, and will be subject to arrest for a misdemeanor.  Any person who prevents the peaceful and orderly conduct of any meeting will be given one warning.  If they persistently disrupting the meeting, that individual will be subject to arrest.  Violators shall be removed from the meeting.

(Def.'s Ex. 1, 00:04–00:26, ECF No. 11-2).

### C.     Facts Reasonably Inferable from the Pleadings

Based on the facts alleged in the pleadings, any reasonable juror would draw the following inferences.  Because Defendant stated that Plaintiff was removed from the Meeting for violating "the disorderly person City Code subsection," which corresponds to section 31-10 of the Flint City Code, Plaintiff was removed from the Meeting for violating section 31-10 of the Flint City Code.  (ECF No. 1, PageID.22).  Because Plaintiff spoke out at the Meeting when she was not registered to speak at the Meeting, was warned by Defendant that she was unreasonably causing a disturbance, and again spoke out after she had been warned, Plaintiff violated section 31-10 of the Flint City Code.  And the Flint City Council's rules empowered Defendant to announce and enforce the sanction of removal for violating section 31-10 of the Flint City Code that she applied to Plaintiff at the Meeting.

### STANDARD OF REVIEW

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), this Court must determine whether the plaintiff pled "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

**ANALYSIS**

Defendant argues that she is entitled to absolute legislative immunity or qualified immunity with respect to Plaintiff's individual-capacity § 1983 claims.  Defendant also argues that Plaintiff fails to plead essential elements of her official-capacity § 1983 claims and her claim under Michigan's Open Meetings Act.  Defendant further seeks attorneys' fees and costs.

Defendant is entitled to absolute legislative immunity from Plaintiff's individual-capacity § 1983 claims and Plaintiff fails to plausibly plead essential elements of her official-capacity § 1983 claims.  And the Court declines supplemental jurisdiction over Plaintiff's claim under Michigan's Open Meetings Act.  Last, Defendant's request for attorneys' fees and costs fails to comply with this Court's local rules, so the Court denies it at this time.

**I.      Plaintiff's Individual-Capacity § 1983 Claims (Counts I and II)**

Defendant argues that Plaintiff's individual-capacity § 1983 claims are barred by absolute legislative immunity.  Because the Complaint alleges facts showing that Defendant's removal order was within the legislative sphere, the Court agrees.

Local legislators are immune from suit under § 1983 for conduct "in the sphere of legitimate legislative activity."  *Kent v. Ohio House of Representatives Democratic Caucus*, 33 F.4th 359, 364 (6th Cir. 2022) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)).  And "the 'legislative sphere' reaches things 'generally done in a session of the [legislature] by one of its members in relation to the business before it.'"  *Id.* at 365 (alteration in original) (quoting *Gravel v. United States*, 408 U.S. 606, 624 (1972)).  A legislator is immune from suit for conduct within the legislative sphere regardless of his or her subjective "intent and motive."  *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998).

This Court recognizes that the legislative sphere includes "presiding over the public-comment period" of municipal government meetings.  *Satchel v. Dayton Township*, No. 16-cv-

11518, 2018 WL 3048583, at *6 (E.D. Mich. June 20, 2018); *see also Timmon v. Wood*, 633 F. Supp. 2d 453, 460 (W.D. Mich. 2008) ("Defendants' actions toward Plaintiff during the public-comment period at each of the meetings fell within the legitimate legislative sphere."). This principle controls Plaintiff's First Amendment individual-capacity § 1983 claims against Defendant.

Taking the facts in the pleadings as true, Defendant ordered Plaintiff removed from the public-comment period of a city council meeting. Thus, Defendant's removal order was within the legislative sphere, and she is immune from Plaintiff's individual-capacity § 1983 claims.

## II.     Plaintiff's Official-Capacity § 1983 Claims

Defendant argues that Plaintiff fails to plausibly plead that her First Amendment rights were violated when she was removed from the Meeting, and therefore that Plaintiff fails to plausibly plead § 1983 claims against her in her official capacity. The Court agrees.

To state a claim under § 1983, a "plaintiff must [plausibly] allege that some person has deprived him of a federal right," and "that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). As relevant here, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).

The Complaint does not specify the entity that Plaintiff asserts her official-capacity § 1983 claims against, but Defendant presumes in her motion to dismiss that Plaintiff asserts them against the City of Flint, Michigan ("City"). Because Defendant's motion is unopposed, the Court adopts this interpretation.

"A local government entity violates § 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights." *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006). Defendant does not argue that her order removing Plaintiff from the Meeting did not represent an official policy or custom of the City, and thus Defendant concedes that Plaintiff plausibly pleads that Defendant's removal order is attributable to the City. However, Defendant maintains that the Complaint fails to plausibly plead that the City's removal order violated Plaintiff's constitutional rights.

As discussed below, Plaintiff fails to plausibly plead First Amendment right-of-access (Count I.A), free-speech (Count I.B), and retaliation claims against the City, and therefore against Defendant in her official capacity.

### A.  Right-of-Access Claim (Count I.A)

With respect to Plaintiff's primary theory under Count I, namely, her right-of-access claim, Defendant argues that the First Amendment right of access does not apply to non-judicial proceedings as a matter of law, and therefore Plaintiff's official-capacity right-of-access claim fails. The Court need not address this question, however, because the First Amendment only prevents the Government from completely closing the doors to a protected proceeding, and Plaintiff alleges only that the City closed the doors of the Meeting to her.

The First Amendment "affords protection against exclusion of the public" from certain proceedings by prohibiting the government from, for example, "summarily closing . . . [the] doors" to such proceedings. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. at 575, 576 (plurality). Here, Plaintiff pleads that the City shut the doors of the Meeting to *her*, but not the public in general. *See also Phillips v. DeWine*, 841 F.3d 405, 419 (6th Cir. 2016) (explaining that the plaintiffs would have stated a right-of-access claim if they had alleged that they sought

"public access" to a proceeding).  Thus, regardless of whether the First Amendment right of access attached to the Meeting, Plaintiff fails to plausibly plead that the City violated that right.

Plaintiff fails to plausibly plead that the City violated her First Amendment right of access, and therefore that Defendant violated her First Amendment right of access in her official capacity.

### B.      Free-Speech Claim (Count I.B)

Concerning Plaintiff's alternative ground for recovery under Count I, *i.e.*, her free-speech claim, free-speech claim, Defendant argues that Plaintiff fails to plead facts showing that the City violated her free-speech rights, and therefore this this ground fails.  Because the pleadings show that the City's removal order was content-neutral, narrowly tailored to satisfy a significant governmental interest, and left open alternative channels of communication, the Court agrees.

"To determine the constitutionality of a government restriction on speech on publicly-owned property, [this Court] consider[s] three questions: (1) whether the speech is protected under the First Amendment; (2) what type of forum is at issue and, therefore, what constitutional standard applies; [and] (3) whether the restriction on speech in question satisfies the constitutional standard for the forum.  *Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010).

Defendant does not dispute that the City restricted Plaintiff's protected speech when it removed her from the Meeting, and city council meetings are limited public forums as a matter of law.  *See Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 518–19 (6th Cir. 2019).  Thus, the question of whether Plaintiff plausibly pleads a free-speech claim turns on whether she plausibly pleads that the City's removal order failed to satisfy the constitutional standard for limited public forums.  She does not.

The constitutional standard that applies to a speech restriction in limited public forum differs depending on whether the restriction is content-neutral or content-based.  *See Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021).  "Government regulation of speech is content-[netural] if a law [does not] appl[y] to particular speech because of the topic discussed or the idea or message expressed."  *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 705 (6th Cir. 2020) (quoting *Vugo, Inc. v. City of New York*, 931 F.3d 42, 49 n.6 (2d Cir. 2019)).  Content-neutral regulations are permissible in limited public forums "if 'they are narrowly tailored to serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information.'"  *Ison*, 3 F.4th at 893 (alteration in original) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).

In contrast, certain content-*based* restrictions in limited public forums, "such as those reserving the forum 'for certain groups or for the discussion of certain topics'" are permissible "so long as they 'are reasonable in light of the purpose served by the forum and are viewpoint neutral.'"  *Id.* (first quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995), and then quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985)).  However, content-based restrictions that "'do[] not neutrally treat an entire subject as off limits,' but rather 'permit[] some private speech on the subject and only disfavors certain points of view'" are per se impermissible.  *Id.* (quoting *Am. Freedom Def. Initiative v. Suburban Mobility Auth.*, 978 F.3d 481, 893 (6th Cir. 2020)).

Taking the facts in the pleadings as true, the City removed Plaintiff from the meeting for violating section 31-10 of the Flint City Code, which prohibits conduct that "prevents the peaceful and orderly conduct of the meeting after having been clearly informed that he or she is in fact unreasonably causing a disturbance."  (Def.'s Ex. 5, ECF No. 11-6, PageID.279).

Because section 31-10 of the Flint City Code prohibits such conduct regardless of whether it consists of speech at all, much less speech that communicates certain topics, ideas, or messages, the City's removal order was content-neutral.

With respect to whether the City's removal order was narrowly tailored to serve a significant interest and left open alternative channels of communication, the government may permissibly regulate speech based on its content to "confin[e] a [limited public] forum to the limited and legitimate purposes for which it was created." *Rosenberger*, 515 U.S. at 829. Here, the Meeting was a limited public forum as a matter of law, and the City's removal order enforced a speech restriction to preserve the peaceful and orderly conduct of the Meeting. Thus, the City's removal order necessarily furthered the Meeting's limited and legitimate purpose. And if the City could have restricted Plaintiff's speech based on its content to further this interest, it would be absurd if the City could not have furthered the same interest in a content-neutral way.

Assuming *arguendo* that the question of whether the City's content-neutral removal order left open alternative channels of communication is analytically distinct from the question of whether it was narrowly tailored to serve a significant governmental interest in preserving the Meeting, the pleadings fail to show that the order did not leave open alternative channels of communication. *See Ward*, 491 U.S. at 802 (holding that restriction on speech in public bandshell left open alternative channels of communication where the restriction "continues to permit expressive activity in the bandshell, and has no effect on the quantity or content of that expression beyond regulating the extent of the amplification").

Plaintiff fails to plausibly plead that the City violated her right to free speech and therefore that Defendant did the same in her official capacity.

### C.      First Amendment Retaliation Claim (Count II)

Concerning Plaintiff's First Amendment-retaliation claim, Defendant argues Plaintiff fails to plausibly plead that the City's removal order qualified as actionable retaliation because the pleadings fail to show that the order was an adverse action.  The Court agrees.

To have plausibly pled a First Amendment retaliation claim against the City, the Complaint must have pled facts showing: "(1) that [Plaintiff] engaged in First Amendment protected activity; (2) that [the City] undertook 'an adverse action' that would deter 'a person of ordinary firmness from continuing to engage in that conduct'; and (3) that there is a 'causal connection' between [Plaintiff's] protected activity and [the City's] adverse action."  *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).  Defendant does not dispute that, but for Plaintiff's protected activity at the Meeting, the City would not have removed her from the Meeting.  Instead, Defendant argues that the Complaint fails to plausibly plead that the City's removal order was an adverse action.

With respect to this question, the Sixth Circuit explained in *Mezibov v. Allen* that "we are required to 'tailor[]' our analysis under the 'adverse action' prong to the circumstances of this specific retaliation claim."  411 F.3d 712, 721 (6th Cir. 2005) (alteration in original) (quoting *Thaddeus-X*, 175 F.3d at 398).  There, the Sixth Circuit considered whether defamatory comments made against a criminal defense attorney by a prosecutor in retaliation for the defense attorney's filing of motions qualified as an adverse action.  411 F.3d at 715–16.  The court concluded that "the appropriate formulation of the 'adverse action' prong in [this] case is whether the alleged defamation would deter a criminal defense attorney of ordinary firmness from continuing to file motions and vigorously defend his client."  *Id.* at 721.

Applying *Mezibov* to the case at bar, Plaintiff must have plausibly pled that the City's removal order would have deterred a community organizer of ordinary firmness from speaking at future city council meetings.  Common sense dictates that ordinarily firm community organizers will speak, or at least attempt to speak, at municipal meetings regardless of whether they have been previously removed from a meeting of the same municipal body.  Thus, Plaintiff fails to plausibly plead that the City took an adverse action against her.

Consequently, Plaintiff fails to state a First Amendment-retaliation claim against the City, and therefore against Defendant in her official capacity.

## III.    Michigan's Open Meetings Act Claim (Count III)

Because the Court dismisses Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's claim under Michigan's Open Meetings Act.  *See* 28 U.S.C. § 1367(c)(3) (establishing that this Court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction").

## IV.    Attorney's Fees and Costs

Defendant requests statutory attorneys' fees and costs as the prevailing party in this case. But this Court requires that such requests "be supported by an affidavit of counsel setting out in detail the number of hours spend on each aspect of the case, the rate customarily charged by counsel for such work, the prevailing rate charged in the community for similar services, and any other factors which the court should consider in making the award."  E.D. Mich. L.R. 54.1.2(b). Because Defendant did not attach such an affidavit to her motion to dismiss nor specify the amount of the award that she seeks, the Court declines to grant her request for attorneys' fees and costs at this time.

15

**CONCLUSION & ORDER**

Plaintiff's § 1983 claims (Counts I and II) fail because Defendant is entitled to absolute legislative immunity from her individual-capacity claims, and she fails to plausibly plead that Defendant violated her constitutional rights in her official capacity.  And the Court declines jurisdiction over Plaintiff's remaining state-law claim (Count III).  The Court also declines Plaintiff's request for an award of attorneys' fees and costs at this time.

Accordingly, **IT IS ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 11) is **GRANTED IN PART**.  The motion is **GRANTED** to the extent that it seeks dismissal of Counts I and II under Fed. R. Civ. P. 12(b)(6) and is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Counts I and II are **DISMISSED WITH PREJUDICE** under Fed. R. Civ. P. 12(b)(6) for failure to state claims upon which relief may be granted.

**IT IS FURTHER ORDERED** that Count III is **DISMISSED WITHOUT PREJUDICE** under Fed. R. Civ. P. 12(b)(1) for lack of supplemental jurisdiction.

**IT IS SO ORDERED.**


Dated:  March 15, 2024                                s/Sean F. Cox
                                                                      Sean F. Cox
                                                                      U. S. District Judge


I hereby certify that on March 15, 2024, the document above was served on counsel and/or the parties of record via electronic means and/or First Class Mail.

                                                                      s/Jennifer McCoy
                                                                      Case Manager